# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TABERON DAVE HONIE,<br><br>    Petitioner,<br><br>v.<br><br>SCOTT CROWTHER, Warden, Utah State Prison,<br><br>    Respondent. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:07-CV-628 JAR<br><br>Judge Julie A. Robinson |

Before this court is Mr. Honie's motion pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), requesting that this court stay his federal case and hold it in abeyance while he exhausts certain of his claims in state court proceedings. ECF No. 107. Mr. Honie seeks to exhaust in state court the following three unexhausted claims: (1) trial counsel's failure to object to the admission of several allegedly prejudicial photographs (claim eight), (2) trial counsel's failure to object to the State's use of allegedly prejudicial victim impact evidence (claim nine), and (3) trial counsel's failure to preserve, and appellate counsel's failure to adequately brief Mr. Honie's appellate claims (claim eleven).[1] After careful consideration of the briefing (ECF Nos, 107, 111, and 119) and the applicable law, the court denies Honie's motion for the following reasons.

## I.    PROCEDURAL BACKGROUND

On July 9, 1998, Mr. Honie broke into Claudia Benn's home and brutally murdered her. A jury convicted Honie of aggravated murder. Honie waived a sentencing jury, and the trial

---

[1] Mr. Honie does not seek to exhaust claim ten, claim thirteen, or claim fourteen, and has stated that he will request to withdraw these claims once his stay and abeyance proceedings are resolved.

court sentenced him to death. *See generally Honie v. State,* 342 P.3d 182 (Utah 2014); *State v. Honie,* 57 P.3d 977 (Utah 2002), *cert. denied Honie v. Utah,* 537 U.S. 863 (Oct. 7, 2002).

Honie sought state post-conviction relief. He filed an amended petition in 2003. PCR 19-92.[2] The state district court granted the State summary judgment on most of the petition four years later. PCR 965-1070. After discovery on the remaining claims, the State again moved for summary judgment on the outstanding claims. PCR 1266-1362. Three and a half years later, Honie responded to the State's second summary judgment motion. PCR 3206-78. In 2011, the state district court granted summary judgment in full and denied Honie post-conviction relief. PCR 3315-48. Honie appealed that ruling with the assistance of his current federal defenders. PCR 3349-51; Docket case no. 20110620-SC.

While that appeal was pending, Honie filed a motion to set aside the judgment under Rule 60(b), Utah Rules of Civil Procedure. PCR 3320-3556. After full briefing, the district court denied the motion. ECF No. 70-2, ex. B. Honie appealed that ruling as well, again with the assistance of his current federal defenders. Docket case no. 20120220-SC. The Utah Supreme Court consolidated both appeals, and on May 30, 2014, the court affirmed. *Honie v. State,* 342 P.3d 182 (Utah 2014).

Honie filed his federal petition on May 18, 2015. ECF No. 47. After the petition was fully briefed, this court ruled on the procedural status of the claims in the petition, finding that 8, 9, 10, 11 and 13 were not exhausted because the Utah Supreme Court had not reviewed them. Honie then filed this Rhines motion asking for a stay and abeyance to exhaust only claims 8, 9, and 11. ECF No. 107.

---

[2] The court will cite to the record of Honie's state post-conviction proceedings, Utah Fifth Judicial District, Iron County case no. 030500157, as "PCR" and the Bates-stamped page numbers, for example PCR 431. A copy of this record is filed with the clerk's office in conjunction with ECF No. 89.

## II. LEGAL FRAMEWORK

District courts have inherent authority to issue stays, and AEDPA does not deprive courts of that authority. But it does limit their discretion to exercise that authority because a stay pursuant to *Rhines* creates tension between AEDPA's goals of federalism and comity and its goal of streamlining the federal habeas process. As a result any stay under *Rhines* cannot be indefinite and must meet certain criteria. The petitioner must show that (1) good cause exists for his failure to exhaust, (2) his unexhausted claims are potentially meritorious, and (3) he has not engaged in abusive litigation tactics or intentional delay. *Rhines,* 544 U.S. at 276-78. "Petitioner, as movant, has the burden to show he is entitled to a stay under the *Rhines* factors." *Carter v. Friel,* 415 F.Supp.2d 1314, 1317 (D. Utah 2006). .

### A. Intentionally Dilatory Litigation Tactics

The court will first address the third Rhines requirement, which is that the petitioner show that he has not engaged in "abusive litigation tactics or intentional delay." *Rhines,* 544 U.S. at 277-78. This requirement recognizes that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death. Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review." *Id.* The State argues that Honie's *Rhines* motion is dilatory. According to the State, Honie's decision to wait nearly fourteen years after raising claims in state court, abandoning them on appeal, then seeking a second round of state review to relitigate the same claims "flouts the AEDPA's purpose of 'reduc[ing] delays in the execution of . . . capital cases.'" *Rhines,* 544 U.S. at 276 (quoting *Woodford v. Garceau,* 538 U.S. 202, 206 (2003). Although Honie notes that he has simply complied with the requirements of the case

management schedule as stipulated to by the parties and ordered by the court, the State argues that the case management schedule did not prohibit Honie from requesting a *Rhines* stay earlier.

Honie argues that his initial post-conviction counsel was ineffective for failing to adequately raise claims eight, nine and eleven when he raised all three of them in his state post-conviction petition as one-line unsupported general assertions. PCR 65-67. The State District Court agreed with the State that Honie had alleged insufficient facts to support his claims and granted the State's motion to dismiss based on post-conviction counsel's failure to comply with the Utah Rules of Civil Procedure 65C(c)(3) and (d)(1). PCR 989. Honie argues that it would have been improper for him to raise claims eight, nine, and eleven on appeal to the Utah Supreme Court after initial post-conviction counsel failed to adequately preserve these claims. *See Utah R. Prof'l conduct 3.1* ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law."). Honie asserts that he had no choice but to omit these unpreserved claims in his appeal to the Utah Supreme Court of the denial of his state post-conviction petition, and to raise them properly in his federal petition.

The State argues that Honie should have filed a second state post-conviction petition in order to exhaust claims eight, nine and eleven prior to now. However, exhaustion is an affirmative defense that must be raised by the State. So until the State raised the defense that these claims are unexhausted and the court ruled that the claims were unexhausted, Mr. Honie had no reason to seek leave to return to state court to exhaust them. This court ruled on March 20, 2017 that these claims are not exhausted because they were not reviewed by the *highest* state

4

court. Honie filed his *Rhines* motion on May 19, 2017. The court does not find Honie to have engaged in intentional or abusive dilatory litigation tactics.

**B. Good Cause**

While the United States Supreme Court in *Rhines* required that the petitioner show that good cause exists for his failure to exhaust, the Court did not define with any precision what constitutes "good cause." One month after the *Rhines* decision, however, the Court stated that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' to excuse his failure to exhaust." *Pace v. DiGuglielmo,* 544 U.S. 408, 416-17 (2005).

Since the *Pace* decision, district courts have reached different conclusions about whether good cause in the *Rhines* context is akin to good cause to excuse procedural default in federal court (which is a high standard that allows the district court to consider the merits of a defaulted claim) or a more expansive and equitable reading of good cause (which is a lower standard that simply allows the claim to return to the state court for merits review). *Compare Hernandez v. Sullivan,* 397 F. Supp.2d 1205, 1207 (C.D. Cal. 2005) (courts should look to procedural default law to determine cause), *with Rhines v. Weber,* 408 F.Supp.2d 844, 848-49 (D.S.D. 2005) (*Rhines II*) (rejecting procedural default analysis for cause in exhaustion context). Based in part on those different standards, some district courts have found that ineffective assistance of post-conviction counsel constitutes good cause for failure to exhaust. *See, e.g., Vasquez v. Parrott,* 397 F.Supp.2d 452, 464-65 (S.D.N.Y. 2005); *See also Rhines II.*

The Tenth Circuit Court of Appeals has not addressed what constitutes "good cause" in the context of a *Rhines* motion. The only circuit court to directly address whether the good cause standard should be high or low is the Ninth Circuit. In *Blake v. Baker,* 745 F.3d 977 (9th Cir.

5

2014), the court followed *Pace* and *Rhines II* to find that good cause for a *Rhines* stay cannot be any more demanding than a showing of cause for procedural default under *Martinez v. Ryan,* 132 S. Ct. 1309 (2012), and, in fact, may be less demanding.

In three recent cases in the United States District Court for the District of Utah, the district court judges clarified "good cause" in the context of a *Rhines* motion. *Kell v. Crowther,* 2:07-CV-359, ECF No. 258 (D. Utah Nov. 16, 2017); *Lafferty v. Crowther,* No. 2:07-CV-322, ECF No. 379 (D. Utah Oct. 30, 2015); *Archuleta v. Crowther*, No. 2:07-CV-630, ECF No. 107 (D. Utah Nov. 12, 2014). All of the courts found the analysis of *Blake* and *Rhines II* persuasive because in the *Rhines* context a petitioner is returning to state court to allow the state court to consider his claims. As Honie notes in his motion, "[t]he courts' reasoning reflects the important distinction between the 'good cause' necessary to excuse the default of state claims, allowing for *federal* review of a claim, and the 'good cause' necessary to excuse the default of state claims, allowing a petitioner *to return to state court* in order to afford the state court the first opportunity to consider the claim." ECF No. 107 at 6 (emphasis in original). "Good cause" in the context of a stay and abeyance procedure is distinct in that the federal court is not preventing the state court from reviewing a claim, rather it is deciding whether a stay is permissible so that the state court can first review the claims before it is presented in federal court.

Honie argues that he has good cause for failing to exhaust his claims because his post-conviction counsel was ineffective for failing to properly raise these claims in his post-conviction petition. Post-conviction counsel raised all of these claims in his post-conviction petition as one-line claims:

- "Trial counsel did not object to the presentation of highly prejudicial victim impact testimony."

6

- "Trial counsel did not object when the prosecutor made his 'drunken Indian' argument."
- "Trial counsel did not object to the admission of highly prejudicial photographs having little or no probative effect, including gruesome corpse photographs, and photographs of Honie in the nude and bloody, of Honie's penis and scrotum, and of the children at the scene of the crime."
- "Trial counsel did not file an objection to the trial court's factual and legal errors in his death penalty calculus."
- Counsel noted that only one claim was preserved for appeal, and "[t]he Utah Supreme Court repeatedly faulted appellate counsel for insufficient briefing, and declined to reach insufficiently briefed issues raised on appeal."

PCR 65-67. Post-conviction counsel did not cite to any case law or provide any analysis as to any of these claims in Honie's post-conviction petition. Honie also argues that while counsel briefly addressed the victim impact evidence argument in the opposition to summary judgment, it was inadequately briefed. *See* PCR 786-793.

This court has held that in order "[t]o exhaust each claim, Mr. Honie had to give the state court a fair opportunity to rule on it," which includes properly raising these claims before the state's highest court. ECF No. 103 at 4. Honie asserts that because post-conviction counsel failed to properly raise these claims in Mr. Honie's post-conviction petition and opposition to summary judgment, the claims could not be raised in his post-conviction appeal. The court finds that under the standard articulated above, Honie has shown good cause for his failure to exhaust, with the following two exceptions.

### i. No good cause for failure to exhaust claim nine

Honie argues that he has good cause for failing to exhaust claims eight, nine and eleven because his post-conviction counsel's inadequate pleading of the claims in state district court meant that the claims were not preserved, thus preventing him from raising them in the Utah Supreme Court. Claim nine, however, actually was preserved for the post-conviction appeal; Honie simply chose not to raise it in the Utah Supreme Court. Honie acknowledges that in his memorandum opposing summary judgment, his initial post-conviction counsel supported claim nine with facts and argument. In his seven pages analyzing this claim, counsel argued that trial counsel was ineffective for not objecting to victim-impact evidence concerning Claudia's contributions to her tribe, her "value as a role model for youth and as a tribal member," and her role in the University of Utah's Women's Center. He cited and relied on language from Utah's victim-impact evidence statute and case law, and provided several citations to the trial record. *Compare* PCR 786-93 *with* ECF No. 47 at 224-31 (claim nine).

Honie could have appealed the denial of claim nine, but chose instead to focus appellate resources on other, better claims. He had his day in court on this claim. He thus fails to show good cause for his failure to exhaust claim nine.

### ii. No good cause for failure to exhaust claim eleven

Honie also presented more than notice-pleading on part of claim eleven in the state district court. In his memorandum opposing summary judgment, Honie argued that his counsel on direct appeal was ineffective for not adequately briefing Honie's claim faulting the prosecutor for his "ethnic statement" and his claim challenging Utah's victim-impact statute under the state constitution. PCR 785-86. In the memorandum, Honie cited to the Utah Supreme Court's opinion affirming his conviction and sentence on direct appeal, to *Payne v. Tennessee,* 501 U.S.

8

808 (1991), and to Utah's victim-impact evidence statute. Again, Honie could have appealed the denial of at least this portion of claim eleven, but chose not to do so.

Therefore the court finds that while Honie has shown good cause for his failure to exhaust claim eight and part of claim eleven, he has not shown good cause with regards to claim nine and the remainder of claim eleven.

### C. Potentially Meritorious

The third requirement for staying a federal case is that the unexhausted claims must be "potentially meritorious," or in other words, not "plainly meritless." *Rhines,* 544 U.S. at 277-78. Honie argues that his claims are potentially meritorious because he has raised colorable federal claims. ECF No. 119 at 11. He argues that the facts he has alleged, plausibly assert a claim under the federal constitution. *Id.*

The State argues that this hurdle is less about the substance of a claim and more about the procedural way that it would be presented to, and treated by, the state courts. The State argues that Honie's claims are plainly meritless within the meaning of *Rhines* because time and procedural bars would prevent Honie from exhausting the merits of his claims in state court. ECF No. 111 at 19.

The court in *Lafferty*, when addressing the identical argument—that Mr. Lafferty's claims were not potentially meritorious because they would be barred in state court—held the following: "The Utah Supreme Court may agree with the state. It may not. But it is the state court, not the federal court, that should determine the procedural posture of a claim." *Lafferty* Order at 9. "Whether a state remedy is presently available is a question of state law as to which only the state courts may speak with final authority." *Simpson v. Camper,* 927 F.2d 392, 393 (8th Cir. 1991). "[A] federal court always must be chary about reaching a conclusion, based upon a

9

speculative analysis of what a state court might do, that a particular claim is procedurally foreclosed." *Pike v. Guarino,* 492 F.3d 61, 74 (1st Cir. 2007). "If the state court resolves the unexhausted claim on a procedural ground, such as a procedural bar under state law, [then] the federal court will review that disposition, applying the standard of review that is appropriate under the circumstances." *Fairchild v. Workman,* 579 F.3d 1134, 1153 (10th Cir. 2009). Federalism and comity require that state courts have the opportunity to make state law procedural decisions.

Therefore, in considering whether Honie's claims are potentially meritorious, the court will not address possible state court time and procedural bars, but will consider only the merits of the claim.

### i. Claim eight is not potentially meritorious

Honie argues in claim eight that his trial counsel was ineffective for failing to object to and argue against the admission of several "graphic, gruesome photographs that had little or no evidentiary value and that were repeatedly shown to the jurors." ECF No. 107 at 13. The photographs were (1) twelve photographs of the deceased victim at the crime scene and on the autopsy table, shown twenty seven times; (2) five photographs of Honie's nude body covered with blood; and (3) two photographs of Claudia's grandchildren, who were present at the time of the offense, with blood on them, shown thirteen times. Honie asserts that the admission of this evidence during his trial was so prejudicial that it resulted in an unfair trial and violated the due process rights afforded to him by the United States Constitution. In support of this assertion, he cites *Strickland v. Washington,* 466 U.S. 668 (1984), and *Payne v. Tennessee,* 501 U.S. 808, 825 (1991) ("In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a

mechanism for relief.") Honie argues that the photographs were unduly prejudicial because of their inflammatory nature and their redundancy to the testimony of law enforcement and the medical examiner, and that they were needlessly cumulative. However, he cites no authority to support his arguments for excluding them. He cites nothing for the proposition that photographs of what Honie did are "unduly prejudicial," "needlessly cumulative," or fundamentally unfair.

The State argues that this claim has no potential merit, because Honie has not overcome the strong presumption that trial counsel chose not to object to photographic evidence of what Honie did. Trial counsel strategically chose to concede Honie's guilt from the outset of the trial because Honie's guilt was beyond dispute. Counsel thus had no reason to object to photographs of the crime at the guilt phase. The photographs could not inflame and prejudice the jury on Honie's guilt because Honie did not contest it. Objecting to the photographs would in fact contradict Honie's strategy to concede both the fact and the gravity of what he had done.

Honie has not demonstrated that the photos were entirely irrelevant. Honie argues that because of the testimony that was presented to the jury, the photographs were unnecessary. A number of police officers testified about what they observed at the scene. The medical examiner testified about the condition of the victim's body and the cause of death, using six diagrams to describe the nature and extent of her injuries. Several witnesses testified that the children were present at the crime scene. Honie argues that the photographs added nothing of value to the testimony of these witnesses. However, the State was not required to rely exclusively on testimony to prove its case. The State could "prove its case by evidence of its own choice." *Old Chief v. United States,* 519 U.S. 172, 187-88 (1997). *Cf. United States v. Gartmon,* 146 F.3d 1015, 1021 (D.C. Cir. 1998) ("Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a

jury. It does not generally require the government to sanitize the case, to deflate its witnesses' testimony, or to tell its story in a monotone.") In presenting the photographs, the State merely presented what Honie had done to Claudia and her family. Because Honie did not and could not contest his guilt, trial counsel had no reason to object to evidence of it.

Honie argues that the photographs of him with blood on his body were irrelevant primarily because the blood was his own, not the victim's. But the blood on his body corroborated his statements to police officers that he held Claudia's "butt" (she had a bloody handprint on her buttock) and his "dick" when he began to sodomize her. TR ROA[3] 607:356-66, 371; TR ROA 608:476. The State's photograph of Dakota nude from the waist down was relevant to prove aggravated sexual abuse of a child.

Honie asserts that the State's only possible purpose in repeatedly showing the photographs was to shock the jury into deliberations driven by passion—fear, anger, disgust— rather than on a rational weighing of the properly admissible evidence. ECF No. 107 at 15-16. He says that the photographs would "blind" the jury "to any other evidence presented, and guarantee the guilty verdict" that the jury "quickly returned." ECF No. 47 at 219. But the record demonstrates that the jury was not blinded to the evidence, and that they actually did rationally weigh the evidence. The jury acquitted Honie of the sexual-abuse-of-a-child aggravating circumstance, showing that the jury did consider and weigh the evidence against the State's burden of proof. TR ROA 518.

Honie bears the burden of proving that, in light of all the other evidence before the jury, excluding the photographs would show a reasonable probability that the jury would have a reasonable doubt about his guilt. *Kimmelman v. Morrison,* 477 U.S. 365, 375 and 389 (1986);

---

[3] The court will cite to Honie's trial record, Utah Fifth Judicial District, Iron County case no. 981500662, as "TR ROA," the Bates-stamped numbers, and the page numbers (for example TR ROA 580:431. A copy of this record is filed with the clerk's office in conjunction with ECF No. 89.

12

*Strickland,* 466 U.S. at 694-96. Honie has not even attempted to meet that burden. Excluding the photographs could not have avoided the guilty verdict that trial counsel conceded was inevitable. The undisputable evidence clearly established Honie's guilt. *See* ECF No. 111 at 25-26. The photographs did not tip the scale against Honie.

Honie argues that "the presentation of these photographs also prejudiced Mr. Honie with the sentencing authority, the trial judge, who would not have seen these horrific and irrelevant photographs over and over again had trial counsel fulfilled his obligation and objected to their repeated display." ECF No. 119 at 18. However, the trial judge would have had access to the photos at the bench throughout the trial in any event, and Honie has not demonstrated that the judge was actually prejudiced by repeatedly being shown the photos. He simply states that he was prejudiced.

The court finds that Honie's claim eight is not potentially meritorious, and therefore is not entitled to a *Rhines* stay to return to state court.

### ii. Claim nine

Even if Honie could demonstrate good cause for his failure to exhaust claim nine, which he has not done (see analysis above), he has failed to demonstrate that the claim is not plainly meritless. Honie argues that the State presented inadmissible victim impact evidence, to which trial counsel should have objected. In reaching this conclusion, he relies on *State v. Carter,* 888 P.2d 629, 652 (Utah 1994), where the Utah Supreme Court held that, under Utah state law, victim impact evidence had "no probative force in the sentencing context." Honie concedes, however, that at the time of Honie's sentencing, the Utah Capital sentencing statute had been amended to allow evidence on "the victim and the impact of the crime on the victim's family. . . ." U.C.A. § 76-3-207(2)(a)(iii). Honie also concedes that the United States Supreme Court has

13

held that "[v]ictim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question[.]" *Payne v. Tennessee,* 501 U.S. 808, 825 (1991).

Also, the judge expressly recognized that both statute and case law prohibited comparing the value of Claudia's life to anyone else's and made plain that he drew no such comparison in reaching his decision. The court emphasized, "Each human life is of equal value. The murder of any victim under the circumstances of this case, no matter what that victims [sic] status, would have been just as painful, traumatic, and reprehensible, and would require the same punishment." TR ROA 546.

Similarly, Honie has not proven prejudice. The sentencing judge expressly excluded the improper comparison, and he still sentenced Honie to death. Honie cites no reason to disbelieve him. The state post-conviction court already rejected Honie's ineffective assistance claim for this reason. PCR 997-98. For all of the above reasons, the court finds that claim nine is not potentially meritorious.

### iii. Claim Eleven

On claim eleven, Honie argues that trial counsel did not adequately preserve most of the arguments he later raised on appeal, and that as a result, the standard for reversal was raised from simple error to manifest, prejudicial error. ECF No. 47 at 236; ECF No. 107 at 33-34. Although Honie argues that counsel failed to preserve all but one appellate claim, he specifically argues about only one unpreserved claim: that the trial court improperly applied the sentencing factors to sentence him to death. ECF No. 47 at 236.

Honie could prove prejudice only if the Utah court had refused relief because, although Honie proved simple error on appeal, he did not prove that the simple error was "manifest."

14

That is not what the Utah Supreme Court did. It is true that the court said the manifest error standard applied to Honie's challenge to the trial court's sentencing decision. *Honie,* 57 P.3d at 992. However, the court proceeded to reason that Honie failed to prove any error—a failure that would have precluded relief even if trial counsel had preserved the appellate claim. *Id.* 991-95. Honie has not argued, let alone proved, a reasonable probability that counsel could have succeeded on a preserved error, and nothing in the Utah court's analysis suggests that it denied relief because it believed there was error, but that the error was not manifest.

Honie has not overcome the strong presumption of constitutionally competent performance. The State makes a strong argument in its response to Honie's petition, that the trial court properly applied the sentencing factors. ECF No. 70 at 167-183. Reasonable counsel could elect not to object to a proper application of the sentencing statute.

On his appellate-ineffectiveness claim, Honie argues that counsel inadequately briefed his challenge to the prosecutor's alleged racially-motivated charging decision. ECF 47 at 238-41. Honie must show that absent any deficient representation, he would have had a reasonable probability of succeeding on appeal, which he does not do.

The Utah Supreme Court already rejected the underlying claim that the prosecutor charged based on Honie's race. *Honie,* 57 P.3d at 986. The court stated that "while the prosecutor's racially related comments made during closing argument . . . were clearly offensive and distasteful, the charge of aggravated murder was supported and proved by the evidence, regardless of defendant's race or ethnicity." *Id.* The court already considered the essence of Honie's claim that the prosecutor charged based on race and that his closing argument shows it. Stressing that already-apparent connection even more had no chance of changing the appellate outcome.

15

*Strickland* requires affirmative proof of a reasonable likelihood of a different appellate outcome. Honie has offered no proof to show that if appellate counsel had stressed the connection between the prosecutor's closing argument and his alleged racist charging decision, the appeal would likely have turned in Honie's favor. The Utah Supreme Court recognized the alleged connection and still rejected Honie's claim.

## IV. Conclusion

For the reasons stated above, the court denies Mr. Honie's motion to stay. ECF No. 107. Honie has not demonstrated that any of the three unexhausted claims that are the subject of this motion meet all of the *Rhines* requirements for a stay and abeyance

SO ORDERED this 13th day of December, 2017.

BY THE COURT:

Julie A. Robinson
United States District Judge