# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TABERON DAVE HONIE,<br><br>      Petitioner,<br><br>v.<br><br>SCOTT CROWTHER, Warden, Utah State Prison,<br><br>      Respondent. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:07-CV-628 JAR<br><br>Judge Julie A. Robinson |

Petitioner Taberon Dave Honie is in the custody of the Utah Department of Corrections ("UDOC"), pursuant to a sentence of death for his 1999 conviction for the aggravated murder of Claudia Benn. He filed this Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and the Local Rules for the United States District Court for the District of Utah, challenging his conviction and death sentence as being in violation of his rights under the United States Constitution. Mr. Honie submits that the State of Utah has violated and arbitrarily refused to correct violations of his constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, thereby resulting in his unconstitutional conviction and sentence of death. This court, for the reasons set forth below, concludes that Honie has failed to make a substantial showing of a denial of a constitutional right with regards to the claims in his Amended Petition.

## I.  FACTUAL HISTORY

On July 9, 1998, Honie broke into Claudia Benn's home and brutally murdered her. Prior to the murder, Honie telephoned the victim's daughter, Carol Pikyavit, at 8:00 p.m., asking her to

come and see him. Carol refused because she needed to go to work, so Honie became upset and threatened to kill her mother and nieces. Honie telephoned twice more before Carol and her sister left to go to work at 10:30 p.m., leaving Carol's daughter and the sister's two children with Claudia. TR ROA 607:239-43, 258.[1]

Around 11:20 p.m., Rick Sweeney, a cab driver, picked up Honie. The driver could tell that Honie was "really drunk," but Honie was still able to give him directions to Claudia's neighborhood. TR ROA 607:267-69.

At approximately 12:20 a.m. several police officers responded to a 911 call from a neighbor and arrived at the victim's home. The officers noticed that the sliding glass door had been broken, allowing entry into the home. The officers ordered the occupants of the house to exit, and they discovered Honie leaving the home through the garage. TR ROA 607:288-92, 316-22.

An officer ordered Honie to put his hands up, and when he complied, the officer noticed that his arms—from fingertips to elbows—had blood on them. The officer asked him about the blood, and Honie replied, "I stabbed her. I killed her with a knife." TR ROA 607:293, 304, 321. The officer said he asked about the blood because he was concerned about Honie's safety. He thought Honie may have been cut on the glass from the broken door. He did not see a knife. And when Honie said, "I stabbed her. I killed her with a knife," the officer "didn't know who" the "her" was and did not know "what we had." TR ROA 607:319-22.

After arresting Honie, the officers inspected the victim's home. Inside, they discovered the victim's partially nude body lying face down on the living room floor. Officers observed a rock

---

[1] A copy of Honie's trial record, Utah Fifth Judicial District, Iron County case no. 981500662, is filed with the clerk's office in conjunction with ECF No. 89. The court will cite to the transcript of the proceedings as "TR ROA," the Bates-stamped numbers, and the page numbers (for example TR ROA 580:431). The Court will cite to any pleadings as PL ROA, the volume number, and the page number (for example PL ROA IV:517).

on the living room floor and saw a large blood-stained butcher knife by Claudia's body. TR ROA 607:294, 299, 314.

Assistant Medical Examiner Maureen Frikke, M.D., did the autopsy. She identified knife wounds that began under Claudia's left ear and went all the way across her neck to her right ear. She observed at least four start marks under the left ear that merged under the right "into this big, huge, deep cut." TR ROA 606:441. The wounds penetrated to the backbone, cutting everything between; skin, fat, muscle, and organs. Claudia's larynx had two, separate, horizontal cut marks. Her esophagus was severed. The carotid arteries and jugular veins were sliced. TR ROA 606:440-42.

Dr. Frikke concluded that the neck wounds were caused by something linear with a sharp edge and with enough strength and substance to cut through all the tissue, including the voice box bones, and with enough rigidity to make three cuts in the back bone behind the voice box and esophagus. TR ROA 608:442. Dr. Frikke also observed multiple blunt force injuries on Claudia's head and face, and a bite mark on her left forearm. TR ROA 608:445-49. Dr. Frikke also detailed numerous stabbing and cutting wounds to Claudia's lower body and genitals.

After his arrest, Honie was taken to the Iron County Jail where Officer Lynn Davis interviewed and photographed him. Officer Davis interrogated Honie three separate times on the morning following the murder. Honie expressed remorse for killing Claudia, stating repeatedly that she was not meant to die.


## II.     PROCEDURAL HISTORY

The State charged Honie with aggravated murder. TR ROA 597:59-60. Prior to trial, the State offered to stipulate to the inadmissibility at trial of three statements that Honie made while

he was in custody. TR ROA 598:7. Honie's counsel, Stephen McCaughey, stated that he intended to admit at least two of the statements to present a more accurate account of what happened the night of the murder and to show evidence of Honie's remorse. He moved to suppress the statements, however, and asked for a ruling on their admissibility to create a record that he was aware of the issue. TR ROA 598:6. The trial court held a hearing and denied the motion to suppress.

Also, in Mr. McCaughey's opening statement, he admitted, "I know in this case there is no question of Mr. Honie's guilt. You are going to find him guilty. The question in this case is going to be one of punishment." He admitted that Honie murdered Claudia during a burglary or an aggravated burglary. McCaughey stated that Honie contested some of the aggravators, that the State had the burden of proving those beyond a reasonable doubt, and that they would be relevant to Honie's penalty, which the judge would decide. TR ROA 607:233-34.

The jury convicted Honie of aggravated murder. PL ROA IV:517. Honie waived a sentencing jury. At the penalty phase, the State relied on the circumstances of the crime; Honie's criminal history, primarily a prior violent assault on Carol; evidence of how the murder had affected the granddaughters who were in Claudia's home that night; and evidence of how Claudia's loss affected her community. TR ROA 605; 606.

Honie presented evidence about his family and personal background. He presented evidence of counseling and attempts to curb his substance abuse, and of an attempted rape by John Boone, a trusted male figure in Honie's life who was later convicted of sexually abusing more than 140 boys. Honie also presented extensive evidence from Nancy Cohn, a credentialed psychologist with forensic training. Among other things, Dr. Cohn testified that Honie's average intelligence and the absence of brain damage meant he presented a low risk for future violence.

She also testified that Honie's violence coincided with intoxication, and that he would not have access to liquor in prison. *Id.*

The trial court sentenced him to death. PL ROA IV:543-52, 556-57. The Utah Supreme Court affirmed Honie's conviction and death sentence. *State v. Honie (Honie I),* 57 P.3d 977 (Utah 2002), *cert denied* 537 U.S. 863 (2002).

Honie sought state post-conviction relief. He filed an amended petition in 2003. PCR 19-92.[2] The state district court granted the State's summary judgment on most of the petition four years later. PCR 965-1070. After discovery on the remaining claims, the State again moved for summary judgment on the outstanding claims. PCR 1266-1362. In 2011, the state district court granted summary judgment in full and denied Honie post-conviction relief. PCR 3315-48. Honie appealed that ruling. PCR 3349-51; Docket case no. 20110620-SC.

While that appeal was pending, Honie filed a motion to set aside the judgment under Rule 60(b), Utah Rules of Civil Procedure. PCR 3320-3556. After full briefing, the district court denied the motion. ECF No. 70-2, ex. B. Honie appealed that ruling as well. Docket case no. 20120220-SC. The Utah Supreme Court consolidated both appeals, and on May 30, 2014, the court affirmed. *Honie v. State (Honie II),* 342 P.3d 182 (Utah 2014).

Honie filed his petition for federal habeas relief on May 18, 2015. ECF No. 47. He raised 14 claims for relief. *Id.* Concurrent with the petition, Honie filed a motion to expand the record with 32 exhibits not considered by the State court. ECF No. 48, ex. A-FF. Respondent opposed both the petition and the motion. ECF No. 70 and 72. Honie later filed a second motion to

---

[2] The court will cite to the record of Honie's state post-conviction proceedings, Utah Fifth Judicial District, Iron County case no. 030500157, as "PCR" and the Bates-stamped page numbers, for example PCR 431. A copy of this record is filed with the clerk's office in conjunction with ECF No. 89.

expand the record with seven additional exhibits, which Respondent opposed. ECF No. 75, ex. GG-LL; ECF No. 87.

After briefing on the petition and expansion motions concluded, this court denied without prejudice Honie's record-expansion motions. ECF No. 105. This court also ruled on the procedural status of the claims in Honie's petition, determining that only claims 1, 2, 3, 4, 5, 6, 7, and 12 were exhausted in State court. ECF No. 103 at 1-2.

Honie next moved for a stay and abeyance under the procedure approved in *Rhines v. Weber,* 544 U.S. 269 (2005), so that he could return to state court to exhaust claims 8, 9, and 11. ECF No. 107. This court denied the *Rhines* motion, concluding that claims 8, 9, and 11 were not potentially meritorious. ECF No. 120 at 1, 10-16. Honie then amended his petition, formally withdrawing claims 8, 9, 10, 11, 13, and 14 and adding additional factual allegations and argument to support his remaining claims. ECF No. 121.

## III.    LEGAL FRAMEWORK

### A.  Standard of Review

This court has determined that claims 1, 2, 3, 4, 5, 6, 7, and 12 were denied on the merits by the Utah Supreme Court and are thus exhausted. These claims are governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996. Under AEDPA, federal habeas relief on claims adjudicated on the merits may only be granted if the State court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under the 'contrary to' clause, a federal

habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. The state court can therefore run afoul of either prong only if the Supreme Court has clearly answered the question at issue. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam) ("Because our cases give no clear answer to the question presented . . . 'it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law."'" (quoting *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alteration in the original))).

In order to prevail on any of his claims, Honie must show that no fairminded jurist would agree that the Utah courts correctly resolved the federal issue. *See Harrington v. Richter,* 562 U.S. 86, 102 (2011). Furthermore, the Supreme Court has noted that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 101. The standard is intentionally "difficult to meet" and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* at 102.

# IV. ANALYSIS

## FIRST CLAIM FOR RELIEF

### TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CONDUCT A REASONABLE INVESTIGATION INTO A VIABLE TRIAL DEFENSE OF VOLUNTARY INTOXICATION PRIOR TO CONCEDING HONIE'S GUILT TO AGGRAVATED MURDER

Honie asserts that trial counsel was ineffective for deciding to concede Honie's guilt early in the case, prior to investigating a viable defense of voluntary intoxication under Utah law, and for failing to consult with Honie about his decision to proceed to trial on a concession-of-guilt theory. Honie argues that he was prejudiced because he had a viable defense of voluntary intoxication under section 76-2-306 of the Utah Code that should have been presented at trial because it could have negated the existence of the mental state necessary to be convicted of aggravated murder.

## A. Exhaustion

Honie raised this claim during his state post-conviction proceedings to the Fifth Judicial District Court and to the Utah Supreme Court. PCR ROA 64-66, 724-726, 733-743, 766-771; Opening Brief of Appellant, at 22-26, 45-50, Oct. 1, 2012. The Utah Supreme Court denied the claim on the merits. *Honie II,* 342 P.3d at 195-97. This court found that this claim was exhausted and properly before this court. ECF No. 103.

## B. "Clearly established" rule of law

Once the court determines that the state court adjudicated the claim on its merits, the next step under § 2254(d) is to decide whether the decision was based upon "clearly established Federal law." If it was not, habeas relief is foreclosed. Without clearly established federal law, as determined by the United States Supreme Court, the habeas court need not even consider whether the state court decision was "contrary to" or "involved an unreasonable application of"

such law. Honie's first claim for relief was based on clearly established federal law. *See Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court squarely addressed what constitutes ineffective assistance of counsel. It was the law at the time the Utah Supreme Court adjudicated Honie's case on the merits.

Honie claimed in the state courts that his trial counsel overlooked a viable voluntary intoxication defense. To succeed on his claim under *Strickland*, Honie had to prove that counsel's representation was both deficient and prejudicial. *See id.* at 687. In order to prove that it was deficient, Honie had to overcome a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. He had to prove that specific acts or omissions fell below an objective standard of reasonableness. *Id.* at 687-88, 690. Furthermore, he had to meet that burden based on the practice standards in Utah at the time of his trial and on the facts and law available to his trial counsel. *Id.* at 689 (explaining that courts must evaluate counsel's conduct from counsel's perspective at the time). Finally, to prove prejudice, Honie had to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The Utah Supreme Court concluded that Honie did not meet that burden on the voluntary intoxication defense. To get relief in this court, he must show that no fairminded jurist would agree. *See Harrington v. Richter,* 562 U.S. 86, 101 (2011). The Supreme Court stated that "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington,* 562 U.S. at 105 (citations omitted). Further, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* "Federal habeas courts must guard against the danger of equating unreasonableness under

*Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* The court finds that the Utah Supreme Court decision was based upon clearly established Federal law.

## C. "Contrary to" clearly established Supreme Court precedent

The next step under § 2254(d) is to determine whether the state court's adjudication of the claim was "contrary to" the clearly established Supreme Court precedent, which in Honie's case it clearly was not. The Supreme Court has held that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams v. Taylor,* 529 U.S. 362, 406 (2000). The state court decision on Honie's first claim was precisely that, "a state-court decision on a prisoner's ineffective-assistance claim [that] correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim." *See id.* Because the state court's ruling on this claim does not fit within the "contrary to" clause, the court will review it under the "unreasonable application" clause of § 2254(d)(1).

## D. "Objectively unreasonable" application of Supreme Court precedent

This court may grant a writ of habeas corpus only if the state-court decision "involved an "unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). A decision may be incorrect or even clearly erroneous, without being unreasonable. If fairminded jurists could disagree on whether the state court's decision was correct, the decision is not unreasonable. *Harrington,* 562 U.S. at 102. The Court in *Harrington* stated:

> If this standard is difficult to meet, that is because it was meant to be. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists

could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102–03.

The Tenth Circuit said it this way: "[u]nder the test, if all fairminded jurists would agree the state court decision was incorrect, then it was unreasonable and the habeas corpus writ should be granted. If, however, some fairminded jurists could possibly agree with the state court decision, then it was not unreasonable and the writ should be denied." *Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014). The court notes that under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington,* 562 U.S. at 105. Thus, for Honie to get relief, he must show that no fairminded jurist would agree that the state court's decision was correct.

The state court held that to prevail on a voluntary intoxication defense, Honie would have had to show that his state of intoxication deprived him of the capacity to form the mental state necessary for aggravated murder. *Honie II,* 342 P.3d at 195. Under Utah law, "[v]oluntary intoxication shall not be a defense to a criminal charge unless such intoxication negates the existence of the mental state which is an element of the offense." Utah Code Ann. § 76-2-306(1). Thus, trial counsel would have had to produce "evidence showing that Mr. Honie was so intoxicated that he neither intended to kill nor knew he was killing a person at the time of the murder." *Honie II,* 342 P.3d at 196, s*ee* Utah Code Ann. § 76-5-202 (stating that aggravated murder is committed "if the actor intentionally or knowingly causes the death of another").

Honie argues that there was significant evidence of his level of intoxication at the time of the crime and during his custodial interrogation that was readily available to trial counsel. Given the amount of strong evidence that trial counsel had, Honie asserts that based on *Strickland*, trial counsel had an obligation to investigate voluntary intoxication as a possible defense at trial before deciding on a concession theory. *See Strickland,* 466 U.S. at 690-91.

The Utah Supreme Court held that Honie did not establish that trial counsel's performance was objectively unreasonable and affirmed the postconviction court's grant of summary judgment on this issue. *Honie II*, 342 P.3d at 195. The court discussed in detail all the evidence that would have alerted counsel that Honie had been drinking when he committed the murder. But the court then noted that evidence of intoxication is not enough:

> Although this evidence may serve to establish that Mr. Honie had been drinking at the time he committed the murder, Mr. Honie has not provided any evidence showing that his "intoxication at the time of the offense prevented him from understanding that his actions were causing the death of another." Evidence of intoxication, be it witness testimony or a numerical measure of the defendant's actual blood alcohol content, is not sufficient to establish a voluntary intoxication defense without actual evidence of the defendant's mental state. Thus, even though Mr. Honie had consumed both alcohol and marijuana prior to committing the murder, "there is no evidence [showing that] he was so intoxicated at the time of the crime that he was unable to form the specific intent necessary to prove the crime of [aggravated murder]."

*Honie II,* 342 P.3d at 196-97 (citation omitted).

The court noted that Honie had presented no evidence that he was so intoxicated that he was unable to form the requisite intent for aggravated murder. In fact, the evidence suggested the opposite. *Id* at 197. Before the police even knew that there was a stabbing victim, Honie told officers that, "I stabbed her. I killed her with a knife." *Id.* The court agreed with the postconviction court that "this statement 'clearly show[ed] that [Honie] understood he had engaged in lethal conduct upon a human being.'" *Id.* Although at first Honie claimed that he had

blacked out during the murder, he eventually admitted to the defense team expert that he wished he had blacked out so that he would not remember what he had done. *Id.* The state court found this to be evidence that he was not so intoxicated that he did not know he was killing a human. *Id.* Although the taxi driver, Mr. Sweeney, told police that Honie was intoxicated, he also testified that Honie was able to give him directions to the victim's neighborhood. *Id.* Honie also responded to and obeyed officers' commands at the scene. *Id.* Officer Davis testified that during his first interview with Honie he could tell that he had been drinking, but that "it was clear that he was fully aware of his situation. Moreover, the defendant's physical appearance and actions did not indicate that his mental state was out of the ordinary." *Id.* Finally, Honie threatened to kill the victim only hours before he killed her. *Id.* According to the state court, this threat showed that "Mr. Honie not only had the capacity to form an intent to murder the victim, but that he in fact acted on that intent." *Id.*

The court found that all this evidence demonstrated that Honie had the ability to form the necessary mens rea for trial counsel to reasonably conclude that a voluntary intoxication defense was unwarranted. *Id.* The court emphasized that Honie had not pointed to any evidence that he was so intoxicated that he was unable to form that intent. *Id.* Honie still has not proffered any evidence that he did not know that he was killing a person. Without that evidence, he cannot overcome the strong presumption that trial counsel properly ruled out a voluntary intoxication defense.

Under *Strickland's* deferential standard and its "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" (*Strickland,* at 689), Honie has not shown "beyond any possibility for fairminded disagreement" that trial counsel were deficient when they omitted a voluntary intoxication defense or that the omission

undermines confidence in the outcome. Honie has failed to establish that the Utah Supreme Court contradicted or unreasonably applied United States Supreme Court precedent in denying this claim. Therefore, the first claim for relief is denied.

SECOND CLAIM FOR RELIEF

TRIAL COUNSEL WAS INEFFECTIVE FOR INTRODUCING HONIE'S INCULPATORY STATEMENTS AT TRIAL DESPITE ACKNOWLEDGING THEY WERE INVOLUNTARILY GIVEN, AND DESPITE THE STATE'S WILLINGNESS TO STIPULATE TO THEIR INADMISSIBILITY

Honie asserts that trial counsel was ineffective for introducing at trial his custodial statements, without first investigating the facts and circumstances of the crime, arrest and custodial interrogation, and even though the state agreed to stipulate to their inadmissibility at trial. TR ROA 598:7. The state, on the other hand, argues that trial counsel believed the statements exhibited Honie's remorse and that counsel made a legitimate strategic decision to introduce them.

## A. Exhaustion

Honie presented this claim during his post-conviction proceedings before the Fifth Judicial District Court and the Utah Supreme Court. PCR ROA 66-68, 724-733; Opening Brief of Appellant, 10/01/12, at 8-17, 50-56; Reply Brief of Appellant 05/16/13, at 11-20. The Utah Supreme Court denied this claim on the merits. *Honie,* 342 P.3d at 198-99. This court found that Claim Two was exhausted and properly before this court. ECF No. 103.

## B. "Clearly established" rule of law

The Utah Supreme Court based its ruling on this claim on *Strickland*, noting that Honie had not demonstrated "that counsel's representation fell below an objective standard of reasonableness." *Honie II*, 342 P.3d at 195 (quoting *Strickland,* 466 U.S. at 687-88). The Utah

Supreme Court reiterated *Strickland's* command that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Honie II*, 342 P.3d at 195 (quoting *Strickland,* 466 U.S. at 687-88). As stated above, *Strickland* is clearly established law.

## C. "Objectively unreasonable" application of Supreme Court precedent

Honie argues that the state court's denial of this claim constituted an "unreasonable application of clearly-established federal law." § 2254(d). He argues that before deciding to introduce his statements, trial counsel should have accepted the state's offer to stipulate to the inadmissibility of his custodial statements and should have investigated the facts and circumstances of the crime and his arrest (implying, without supporting evidence, that trial counsel did not do so). Honie asserts that trial counsel's performance was deficient and prejudicial because it was only through trial counsel's actions that jurors heard inflammatory and prejudicial details about the crime, through Honie's own statements, which would never have come into evidence at trial but for trial counsel's actions. The court finds Honie's arguments unpersuasive.

Trial counsel Mr. McCaughey made clear from the beginning that he intended to admit at trial two of the three custodial statements in order to (1) present a more accurate account of what happened the night of the murder and (2) provide evidence of Honie's remorse. McCaughey moved to suppress the statements, however, and asked for a ruling on their admissibility to create a record that he was aware of the issue. TR ROA 598:6. He informed the court, "So I am sort of doing this for the record, so the record's clear that we are aware, that is, there may be some *Miranda* violations in this case. And I want the record to reflect that we are pointing those out." *Id.* In response to trial counsel's position, the state prosecutor stated:

> This is a capital case . . . [and] the state will concede if counsel feels that in the best interest of his client, the accused, that these are statements that should be suppressed[,] [t]he state does not want to overreach or push or anything that may be on the edge of denying the defendant his fair day in court or violating his constitutional rights. So I will concede to strike, omit, not use and not refer to the three statements of Officer Davis in any of the proceedings if that's the request of the defendant.

*Id.* at 7. Trial counsel refused the prosecutor's offer to stipulate to the inadmissibility of the statements and reiterated that the only reason he was challenging the use of the statements at trial was because "I don't want two years down the road somebody coming back saying, hey, you should have moved to suppress those statements, because there was no *Miranda* given." *Id.* at 11.

The court held a hearing on the motion to suppress, denying it on the merits. *Id.* at 12. The court ruled that Detective Davis properly advised Honie of his *Miranda* rights before taking the first statement, and that Honie validly waived them. The court also found that under relevant legal considerations, Davis was not required to re-advise Honie before the second and third interviews. The court relied on Davis's unopposed testimony that Honie appeared to understand what was going on and concluded that his intoxication did not invalidate either his statements or the waiver of his rights. Honie argues that he was too intoxicated to voluntarily confess. But his intoxication would have made his statements involuntary only if Davis exploited Honie's intoxication to extract his statements. The trial court credited Davis's testimony that he did not do so. The court denied the motion to suppress, and counsel introduced the statements during trial.

The Utah Supreme Court reiterated that under *Strickland*, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 688. In addition, the court noted that, "strategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. The court cited *Ayala v. Hatch,* 530 Fed. Appx. 697 (10th Cir. 2013); *Gardiner v. Ozmint,* 511 F.3d 420 (4th Cir. 2007); and *United States v. Fulks,* 683 F.3d 512 (4th Cir. 2012), and held that trial counsel's strategic choice to admit a defendant's inculpatory statements may be reasonable if it furthers the defendant's interests. *See Honie,* 342 P.3d at 198-199. In holding that trial counsel's decision was not objectively unreasonable, the court stated the following:

> Like the defense counsel in *Fulks*, Mr. Honie's trial counsel was dealt a similarly "unpalatable hand." As we have discussed, Mr. Honie's trial counsel was presented with a client who was clearly guilty of committing a heinous crime. Here, trial counsel adopted a mitigation strategy, attempting to highlight Mr. Honie's feelings of remorse through the admission of statements Mr. Honie made to police. In addition, unlike trial counsel in *Gardner,* Mr. Honie's trial counsel not only had a specific strategic purpose for admitting these statements, but counsel also used them to further his client's interest by attempting to present mitigating evidence for both the judge and jury to consider.

*Honie II,* 342 P.3d at 199. Honie has not shown that no fairminded jurist would agree that the Utah courts correctly resolved this issue. Nor has he overcome the double deference owed to trial counsel's decision to admit the statements.

Honie repeatedly asserts that trial counsel decided to concede guilt and introduce his client's inculpatory statements at trial without reviewing the discovery or conducting the necessary investigation required of reasonable counsel. However, he cites no record evidence in support of this assertion. He presents no evidence about what investigation trial counsel did or when, or why trial counsel made the strategic decisions that they did. Honie argues that trial counsel could have called witnesses to testify that he was extremely intoxicated. He does not show, however, that their testimony would have refuted the arresting officer's testimony that Honie appeared responsive at the scene and able to follow his directions, which, in his

experience, intoxicated persons usually cannot do. Nor has he shown that the testimony of these witnesses would have refuted Davis's testimony that Honie appeared aware of the situation, and that his mental state did not appear to be out of the ordinary. Thus, Honie cannot show that all fairminded jurists would have found the investigation deficient.

Honie also argues that he was prejudiced because his statements to Davis presented damaging evidence at the guilt phase. ECF No. 47 at 107-108. To prove prejudice, Honie would have to show that absent his statements, there would have been a reasonable probability that the jury would have had a reasonable doubt about his guilt. *See Strickland*, 466 U.S. at 695. And he would have to meet that burden in the context of "the totality of the evidence before the . . . jury." *Id.* Honie has not met that burden. Overwhelming evidence of Honie's guilt independent of any admissions to Davis ensured his conviction for aggravated murder. *See* ECF No. 70 at 69-70. Even without Honie's admissions, it was undisputed and indisputable that, at a minimum, Honie killed Claudia (1) after breaking into her home, and (2) while committing object rape. Excluding his statements to Davis could not have made a better guilt-phase result reasonably probable.[3]

Honie also argues that there was no purpose for the jury in the merits phase to hear Honie's admissions to Davis, which were "highly prejudicial evidence," when that jury would not be deciding the penalty. ECF No. 121 at 116. He argues that the jurors at the merit phase were only determining guilt or innocence, not considering mitigation, and therefore, they could not consider evidence of remorse. Honie argues that because the jurors could not consider

---

[3] Honie argues again that counsel should have challenged his statement at the scene that he stabbed her and killed her with a knife. However, that argument is not exhausted, because he never made it to the state courts—he never claimed that counsel should have challenged that statement. Also, trial counsel could have reasonably concluded that the trial court would find that the officer was not interrogating Honie when he asked where he got the blood. The officer testified at trial that he asked about the blood because he was concerned about Honie's safety.

evidence of remorse at this stage of the trial, the statements only provided proof that he committed the murder and furthered the State's allegations of aggravating circumstances.

Once again, Honie has not overcome the double deference owed to trial counsel's decision to admit the custodial statements. Counsel used the three statements, along with Honie's later full admission to the defense mental health expert to support a mitigation theme—Honie's progression to full disclosure showed his remorse for the murder. Because the evidence of Honie's guilt was overwhelming, trial counsel legitimately chose to focus on penalty mitigation. *See Florida v. Nixon,* 543 U.S. 175, 190-91 (2004) ("[T]he gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus. . . In such cases, 'avoiding execution [may be] the best and only realistic result possible.'").

Honie attempts to distinguish *Nixon* by arguing that the Court did not address whether such a decision could be strategic when the jury that hears the mitigation evidence does not decide the sentence during the penalty phase. The court finds this distinction irrelevant in this case. The evidence of Honie's guilt was overwhelming for several reasons. He admitted at the scene that he killed Claudia; he was the only surviving adult at the murder scene; his arms were covered in blood; and Claudia's young grandchildren were the only other persons present. The evidence of Honie's guilt is strengthened by the fact that he has never even suggested that someone else committed the murder. Finally, because the sentencer for whom the evidence of remorse would be relevant—the judge—was also present for Davis's guilt-phase testimony, counsel had no reason to wait to begin developing the mitigation case until the penalty phase. Thus, trial counsel was justified in conceding Honie's guilt and admitting the statements in order to develop the mitigation remorse theme.

Honie has not met his burden of showing that all fairminded jurists would have decided this case contrary to the way the Utah Supreme Court did. The state court's denial of this claim did not constitute an unreasonable application of clearly-established federal law. Therefore, the second claim for relief is denied.

## THIRD CLAIM FOR RELIEF

### TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PROPERLY ADVISE HONIE OF HIS RIGHT TO HAVE A JURY DETERMINE HIS PENALTY, RESULTING IN A JURY WAIVER THAT WAS NOT KNOWINGLY AND VOLUNTARILY GIVEN

In Utah, capital defendants have a statutory right to jury sentencing, which a defendant may waive with approval of the court and consent of the prosecution. Utah Code Ann. § 76-3-207(1)(b). At a pre-trial scheduling conference held approximately two weeks before trial, counsel informed the court that he anticipated waiving the jury in the penalty phase to "eliminate the need to death qualify this jury" and so that the evidence would only have to be put on once, thereby simplifying the process. TR ROA 602:3-4. Trial counsel described it as "short circuit[ing] things quite a bit, especially the death qualification of the jury." *Id.* at 4. After discussing the relatively new statute with the trial court, trial counsel explained that the court's decision to accept the waiver was determined by whether the waiver is knowingly and intentionally made. *Id.* Trial counsel informed the court that he had discussed the waiver with Honie who agreed to it and that the State had provided the necessary statutory consent. *Id.* at 4-5. The prosecutor then asked for assurances that the court would consider imposing the death penalty. The judge noted that imposing the death penalty was "the last thing a judge would want to do," but said that he would impose the death penalty if, after listening to the aggravating and mitigating factors, he felt it was appropriate and the facts and circumstances of the case

warranted it. *Id.* at 7-8. When asked by the trial judge whether the number of witnesses would be the same with either a judge or a jury determining sentence, trial counsel noted that he would call fewer witnesses during the penalty phase if the judge, rather than a jury, were to consider sentencing. *Id.* at 9. The judge responded, "That's not a factor in my decision."

The prosecutor noted that time was not an issue with him either. He said that in a case of this magnitude, he wanted to give the defendant the benefit of the doubt on every request. He said, "If the defendant wants it, and the state can, within the bounds of ethical and moral and legal restraints do it, then I want to do it. If this defendant wants to waive a jury, I want to give him that opportunity and err on the said [sic] of caution to the defendant. . . . I don't want to make him face a jury in the penalty phase if he doesn't want to." *Id.* at 9-10. In response, trial counsel said, "[t]he other thing, the time factor with us, that doesn't really enter into it. . . . the decision was made for other reasons than that." *Id.* at 10. Trial counsel then requested more time to review the waiver with Honie before the colloquy with the judge. *Id.* at 10–11.

Honie signed a written "Waiver of Jury in Penalty Phase." *Id.* at 11; TR424. The waiver form stated that pursuant to § 76-3-207, Honie "knowingly and intelligently waives his right to have a jury determine the sentence, in the above-entitled case, in the event the Defendant is found guilty of Aggravated Murder in the guilt phase of the proceedings." TR424. The waiver further stated that Honie had discussed the waiver with trial counsel; had "been advised of the full scope of options and ramifications" of waiving a sentencing jury and allowing the judge to determine the penalty; had specifically waived "the right to have a jury of twelve persons determine the penalty"; understood that "it would only take one (1) juror to dissent or vote against imposing the death penalty, and that ten (10) jurors are sufficient to impose a sentence of life without the possibility of parole." *Id.*

In court, trial counsel reviewed the jury waiver form that Honie had signed. TR603:11. Honie affirmed that he had read the waiver, executed it, talked to his counsel about it, told his counsel that he had no questions about it, and understood its consequences. Trial counsel asked Honie if he had read and understood the waiver, and whether he understood that he was giving up his right to have a jury of twelve people decide the penalty phase of his case if he was convicted. Honie was also asked whether trial counsel had explained to him the ramifications of the twelve- person jury: if one person dissents, the death penalty will not be imposed; if ten people can agree, then life in prison without parole will be imposed; and if fewer than ten people agree, life imprisonment with the possibility of parole will be imposed. *Id.* at 11–12. Honie answered affirmatively and confirmed that he was voluntarily waiving his right to have a jury decide the penalty. *Id.* at 12. Honie confirmed that no one coerced or forced him to waive his right; that he was not under the effects of alcohol or drugs; that he had no questions for counsel or the trial court; that there was no doubt in his mind this was what he wanted to do; and that his decision was based on counsel's advice but was his decision alone. *Id.* at 13.

The trial court then followed up with this exchange with Honie:

> THE COURT: And then, do you understand that to not receive the death penalty you would have to have—I don't know quite how to put this in layman's terms and still be accurate legally—but with a judge, there is just one person you would have to convince. There is a reasonable doubt with 12 jurors, you got 12 chances to convince somebody that there is a reasonable doubt there. So do you understand that you are reducing your field there for 12 down to one?
>
> THE DEFENDANT: Yes.
>
> THE COURT: I don't want to insult your intelligence, but do you understand that?
>
> THE DEFENDANT: Yes, I do.

THE COURT: And you still want to go ahead with the waiver of the jury for the penalty phase?

THE DEFENDANT: Yes, sir.

*Id.* at 14.

In state post-conviction review, Honie submitted an affidavit in which he attested (1) he did not understand the term "mitigation," "what aggravators and mitigators were," or what the process would be; (2) trial counsel and the defense investigator told him it would be a good thing to waive the jury because "the judge was young and likely to go for a life without parole sentence"; (3) counsel told him "it would have to be [his] decision to waive the jury"; (4) no one told him the jury's role at sentencing "and what was necessary for a death sentence"; (5) after waiving the jury, a "jailhouse lawyer" told him that he had made a mistake, and that he only needed one holdout juror to get a life sentence; and (6) about one week after getting the "jailhouse lawyer's input," he asked trial counsel to withdraw the waiver, but trial counsel told him it was too late. PRC811–12. Honie concluded, "[i]f I had understood the differences between a judge determination and a jury determination, I would have gone with the jury in the penalty phase and not waived the jury." *Id.* 811–12.[4]

Honie argues that trial counsel was ineffective for failing to properly and adequately advise Honie of his right to have a jury determine his sentence, and for failing to move to withdraw his jury waiver upon the request of Honie prior to trial. Honie argues he was prejudiced by trial counsel's actions, because but for trial counsel's deficient performance, he would have withdrawn his jury waiver and had his sentence decided by a jury of twelve peers, rather than one judge.

---

[4]Mr. Honie later said that the court's misstatement led him to believe that he could more easily convince the judge than twelve jurors. This statement was not included in Honie's post-conviction affidavit.

### A. Exhaustion

Honie presented this claim during his post-conviction proceedings to the Fifth Judicial District Court and the Utah Supreme Court. PCR ROA at 68, 752-766; Opening Brief of Appellant, 10/01/12 at 17-22, 67-75. The Utah Supreme Court denied the claim on the merits. *Honie,* 342 P.3d at 200-02. This court found that this claim was exhausted and is now properly before the court. ECF No. 103.

### B. "Clearly established" rule of law

The Utah Supreme Court based its decision on *Strickland*, holding that "trial counsel's advice to waive a jury at sentencing was not objectively unreasonable under the first prong of *Strickland,*" and that even if it did constitute deficient performance, "Mr. Honie was not prejudiced under the second prong of *Strickland." Honie II,* 342 P.3d at 200. As described above, *Strickland* is clearly established Federal law.

Honie also relies on *Adams v. United States ex rel. McCann,* 317 U.S. 269, 272-73 (1942), for the proposition that a defendant may waive the right to a jury trial when "there is an intelligent, competent, self-protecting waiver" and an "exercise of a free and intelligent choice." *McCann* is a Supreme Court decision that was the law at the time of the state-court adjudication on the merits and that squarely addresses the issue of what is required for a defendant to waive his right to a jury trial. It is clearly established Federal law.

### C. "Objectively unreasonable" application of Supreme Court precedent

As discussed in Claim One, above, this court may grant a writ of habeas corpus *only* if the state-court decision involved an "unreasonable application" of "clearly established Federal law." § 2254(d)(1). A decision which is incorrect or even clearly erroneous, may not necessarily be unreasonable. *Lockyer v. Andrade,* 538 U.S. 63, 71 (2003). A state court's decision is not an

unreasonable one if *fairminded jurists* could disagree about whether it was decided correctly. *Harrington,* 562 U.S. at 101. The Supreme Court has stated that the standard is intentionally difficult to meet, preserving the authority to issue the writ only in cases where every fairminded jurist would agree that the state court decision was incorrect. *Id.* at 102. The fairminded jurist standard is extremely deferential, requiring Honie to show that the Utah court's decision amounted to an "extreme malfunction[ ] in the state criminal justice system" that is "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id* at 102-03. The Tenth Circuit described the standard as follows: "Under the test, if all fairminded jurists would agree the state court decision was incorrect, then it was unreasonable and the habeas corpus writ should be granted. If, however, some fairminded jurists could *possibly* agree with the state court decision, then it was not unreasonable and the writ should be denied." *Frost v. Pryor,* 749 F.3d 1212, 1225 (10th Cir. 2014).

The State of Utah provides a right to jury sentencing in its capital murder sentencing statute, Utah Code Ann. § 76-3-207(1)(c) and (5), and thus any waiver of this right must comport with the demands of Fourteenth Amendment Due Process and Equal Protection. *See Evitts v. Lucey,* 469 U.S. 387, 393 (1985). In the recent *Hurst* case, the United States Supreme Court held that a capital defendant has a constitutional right to be sentenced by a jury. *Hurst v. Florida,* 136 S. Ct. 616, 624 (2015). And because this case deals with capital sentencing procedure, the Eighth Amendment requirement for reliability in capital cases is also implicated. The Supreme Court, in *Gregg v. Georgia,* 428 U.S. 153, 187 (1976), noted that "[t]here is no question that death as a punishment is unique in its severity and irrevocability." Thus, "[w]hen a defendant's life is at stake, the Court has been particularly sensitive to insure that every safeguard is observed." *Id.* The Supreme Court has also found that other constitutional rights are implicated

during the sentencing phase of a capital trial given its trial-like nature, providing capital defendants with greater protections during capital sentencing than in ordinary sentencing proceedings. *See Strickland*, 466 U.S. at 686-87 (finding that because a capital sentencing proceeding is more like a trial than an ordinary sentencing proceeding, the Sixth Amendment right to the effective assistance of counsel exists during capital sentencing proceedings).

In Honie's case, the state court held that trial counsel's advice to waive a jury at sentencing was not objectively unreasonable under the first prong of *Strickland*, that Honie's waiver was knowing and voluntary, and even if trial counsel's failure to move to withdraw Honie's waiver was deficient performance, Honie was not prejudiced under the second prong of *Strickland*.

### 1. *Strickland* Performance Prong

The state court began its analysis with a strong presumption that trial counsel acted competently. Under *Strickland*, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. When assessing whether a petitioner has demonstrated that his attorney's representation was constitutionally deficient, the court looks to "the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. In order to overcome that presumption, Honie must show that trial counsel's "representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688.

### a. Advice to Waive Jury Sentencing

First, the state court reasoned why trial counsel's advice to waive the sentencing jury was objectively reasonable. The state court acknowledged that "[i]f counsel had a reasonable basis for advising a client to waive a jury at sentencing, we will not second guess that strategic

decision." *Honie II,* 342 P.3d at 200 (citing *Wiggins v. Smith*, 539 U.S. 510, 523 (2003)).  The

state court relied on *Taylor v. Warden*, 905 P.2d 277, 284 (Utah 1995), where the Utah Supreme

Court held that counsel may reasonably presume that a trial judge "will apply the law justly and

make an impartial decision in both the guilt and penalty phases of a capital trial,"and "will

disregard any personal beliefs and discharge his or her duty to apply the law," *Honie II*, 342 P.3d

at 200 (citing *Taylor v. Warden*, 905 P.2d 277, 284 (Utah 1995)). The state court continued,

noting that "[i]ndeed, absent any specific allegations of personal bias, we cannot conceive of any

situation in which choosing a judge over a jury would not constitute a legitimate tactical

decision." *Id.* Citing *Taylor*, the state court held that given "the overwhelming evidence of Mr.

Honie's guilt and the gruesome nature of the crime," and the judge's statement that imposing a

death sentence was "the last thing a judge would want to do," it "was not unreasonable for trial

counsel to conclude  . . . that Mr. Honie would fare better with a judge rather than with a jury."

*Honie II,* 342 P.3d at 201. The state court further noted that at the scheduling conference in

which Honie waived his right to a jury, the trial judge "acknowledged that, although he was not

philosophically opposed to the death penalty, he would only impose it if the facts and

circumstances of the case warranted it." *Id.*

    A defense counsel's decision to advise a defendant to waive his right to jury and proceed

with a non-jury trial is a "classic example of strategic trial judgment" for which *Strickland*

requires highly deferential judicial scrutiny. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th

Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1

(10th Cir. 2001)). Counsel's advice to his client to waive a trial by jury "constitutes a conscious,

tactical choice between two viable alternatives." *Id.*  For counsel's advice to rise to the level of

constitutional ineffectiveness, the decision to waive a jury must have been "completely

unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." *Id.* The state court concluded that in this case, given the gruesome nature of the murder Honie committed, as well as the trial judge's statements on the record, trial counsel could have reasonably believed that it was better strategy for Honie's sentence to be tried by the judge rather than a jury.

Honie argues that this is an unreasonable fact determination because while it is true that such a motive would not be unreasonable, there is nothing in the record to indicate that this was counsel's *actual* reason for advising Honie to waive a jury at sentencing. "*Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 562 U.S. at 110. Honie proffers no evidence that counsel's advice was objectively unreasonable. Honie points to trial counsel's comments to the state court that waiving the sentencing jury would streamline the trial. After both the court and the prosecutor clearly expressed that saving time and shortening the trial were not a concern to them, trial counsel told the trial court that the time required to death-qualify the jury did not enter into the defense decision to waive the jury, and that "the decision was made for other reasons than that." TR ROA 602:10. Honie argues that trial counsel never indicated what those "other reasons" might be and his statement at this time contradicted statements that he made before and afterward, which indicate his reasons for the advice to waive a jury was that he wanted to shorten the time it would take to try the case. But these comments referred to the *effect* of waiving the jury, not the reason for the waiver; trial counsel's comments were made in the context of a scheduling hearing, where the judge wanted to discuss timing and security issues involving the capital trial and jury selection. TR 602:4–6.

If trial counsel advised Honie to waive the jury for reasons that were not objectively reasonable, Honie has not proffered what those reasons were. Without more, trial counsel's comments do not show that counsel's advice bore "no relationship to a possible defense strategy." *Hatch*, 58 F.3d at 1459.  Rather, without any evidence to the contrary, Honie has not demonstrated that the state court decision contradicted or unreasonably applied clearly established federal law.  The state court's analysis recognized and correctly applied *Strickland's* performance prong.

### b.  Knowing and Voluntary Waiver

Second, the state court rejected Honie's argument that his waiver was not knowing and voluntary. Honie argues that the jury waiver form that was executed and the colloquy that occurred were inadequate to ensure that his waiver of jury sentencing was made knowingly, intelligently, and voluntarily, in contravention of the Eighth and Fourteenth Amendments of the United States Constitution.  Specifically, Honie argued to the state court that he was not informed that (1) he had the right to an impartial sentencing jury; (2) the jury would have to weigh aggravating and mitigating factors; and (3) he was never properly instructed on what aggravating and mitigating factors actually are. *Honie II*, 342 P.3d at 201.  The state court reasoned that Honie's claim that he was not notified regarding his right to an impartial jury and the use of aggravating and mitigating factors "is not relevant to his choice between a judge and a jury in terms of sentencing" because either one "guaranteed the right to an impartial sentencer who would weigh the aggravating and mitigating factors." *Id.* The state court held the relevant consideration in Honie's decision to waive jury sentencing "was the difference between a single judge and a twelve-person jury," which was described to Honie during the scheduling hearing where the trial court specifically asked whether "Honie understood that he was reducing his

chances of convincing a person to vote against the death penalty from '12 [sic] down to one." *Id.*

Thus, the state court held, "the relevant distinction between sentencing by a jury or a judge was

explained to Mr. Honie and he affirmed to the court that he understood the distinction and

wanted to proceed with the judge at sentencing." *Id.*

The Supreme Court has emphasized the importance of a criminal defendant's Sixth

Amendment right to a trial by jury and that this right may only be ceded by a knowing,

voluntary, and intelligent waiver. *United States ex rel. McCann*, 317 U.S. 269, 272–73 (1942).

The importance of this fundamental right is reflected in Federal Rules of Criminal Procedure 23,

which mandates that all waivers of jury trials be in writing, signed by both parties, and approved

by the court on the record. Utah Rules of Criminal Procedure 17 mandates felony cases be tried

by a jury unless the defendant waives a jury in open court with the approval of the court and the

consent of the prosecution. At issue in this case, Utah Code Ann. § 76-3-207(1)(c)(i) provides a

right to a jury sentencing in capital felony cases, which the defendant may waive with the

approval of the court and consent of the prosecution. "Under prevailing professional norms,

competent defense counsel is expected to ensure a criminal defendant receives the benefit of

those well-established [jury waiver] procedures." *Vickers v. Superintendent Graterford Sci*, 858

F.3d 841, 851 (3d Cir. 2017).

This same standard for waiver of a jury at trial applies to capital sentencing proceedings,

given that capital sentencing proceedings are more like a trial than an ordinary sentencing

proceeding. *See Strickland*, 466 U.S. at 686 (Holding that while an ordinary sentencing "may

involve informal proceedings and standardless discretion in the sentencer," a capital sentencing

proceeding "is sufficiently like a trial in its adversarial format and in the existence of standards

for decision, [internal citations omitted], that counsel's role in the proceeding is comparable to

counsel's role at trial.") (citations omitted). Thus, because Honie had a state statutory right to be sentenced by a jury in his capital murder case, it was incumbent upon trial counsel to ensure that Honie was fully informed about his options and the consequences of waiving a jury.

Under the Utah capital sentencing scheme, consideration of guilt-phase aggravators is permissible during the penalty phase. Utah Code Ann. § 76-5-202(1). Once a defendant has been found guilty of a capital felony, the case then goes to a sentencing phase where the aggravating circumstances found in the guilt phase may be considered. Utah Code Ann. § 76-3-207(1), (3) (1995). The United States Supreme Court and the Utah Supreme Court have held that the consideration of aggravating circumstances in both the guilt phase and the penalty phase of a trial does not *de facto* shift the burden of proof to the defendant or render the sentencing scheme unconstitutional. *See Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988); *Parsons v. Barnes*, 871 P.2d 516, 528 (Utah 1994). Instead, "a defendant is simply given an opportunity to present additional, less obvious mitigation evidence if he so chooses. The burden of proof is never shifted to the defendant." *State v. Lafferty,* 20 P.3d 342, 376 (Utah 2001). Before the death penalty may be imposed, a jury (or judge) must determine beyond a reasonable doubt that (1) the aggravating factors in their totality outweigh the mitigating factors in their totality, and (2) the imposition of the death penalty is justified and appropriate under the circumstances. *Id.* at 376–77. "Then, having weighed *all* the circumstances, the jury may choose to impose the death penalty. Such a punishment is never mandated or imposed automatically, regardless of whether evidence is offered in mitigation. The burden never shifts to the defendant." *Id.* at 377.

The Court concludes the facts of this case show that Honie's jury waiver was knowing and voluntary, and thus the state-court decision was not contrary to or an unreasonable application of clearly established Federal law. § 2254(d)(1). Honie argues that his federal

constitutional rights were violated when trial counsel failed to inform him (1) that he had a statutory right to an impartial jury that would have to find that the totality of the aggravating factors outweighed the mitigating factors beyond a reasonable doubt for the death penalty to be considered; and (2) that the state carried the burden of proving that the death penalty was appropriate. These arguments are without merit.

First, as the state court explained, Honie's claim that he was not notified regarding his right to an impartial jury and the use of aggravating and mitigating factors is not relevant to his choice between a judge and jury in terms of sentencing, because regardless of whether he was sentenced by a judge or jury, he was guaranteed the right to an impartial sentencer who would weigh the aggravating and mitigating factors. *Honie II*, 342 P.3d at 201. Honie's argument that the state court failed to explain how Honie would know he was entitled to an unbiased jury presupposes that a judge is not unbiased or is somehow held to a different standard of proof in deciding what penalty to impose.

Second, the state court decision did not unconstitutionally shift the burden to Honie to "convince" someone to vote against the death penalty. Honie affirmed both in writing and in court that he understood the dissenting vote of only one of twelve jurors would foreclose a death sentence. As the trial court explained, with twelve jurors, there were "12 chances to convince somebody that there is reasonable doubt," but with a judge he had "reduc[ed] his field" of chances down from "12 to one." TR 602:14. The state court found the trial court explained to Honie the relevant distinction between sentencing by a jury or a judge. *Honie* II, 342 P.3d at 201. While inartfully phrased, the trial court's question to Honie whether he understood that he was reducing his chances of convincing a person to vote against the death penalty from twelve down

to one did not shift the burden of proof to Honie or otherwise invalidate his waiver. Honie understood that with a single judge, a split decision was not possible.[5]

In *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275-78 (1942), the Supreme Court held that a defendant may waive the right to a jury trial when "there is an intelligent, competent, self-protecting waiver" and an "exercise of a free and intelligent choice." The Supreme Court has explained that a waiver is "knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general circumstances—even though the defendant may not know the specific detailed consequences of invoking it." *United States v. Ruis*, 536 U.S. 622, 629–30 (2002). Even if a criminal defendant "lack[s] a full and complete appreciation of all the consequences flowing from his [Sixth Amendment] waiver, it does not defeat the State's showing that the information provided to him satisfied the constitutional minimum." *Patterson v. Illinois*, 487 U.S. 285, 294 (1988) (citation omitted).

Honie cites no Supreme Court precedent that a defendant must be specifically apprised of his right to an impartial jury or of the burden of proof in order to knowingly and intelligently waive his right to a jury for sentencing. None of the cases Honie cites describes a particular colloquy necessary to validate a defendant's waiver of a right to a sentencing jury. On the contrary, the Tenth Circuit has explained that when insuring such waivers are knowing, voluntary, and intelligent, courts should inform defendants that a jury is composed of twelve

---

[5]Honie did not raise the burden of proof issue with the state court. Although Honie now argues before this Court that the trial judge's statement led him to believe it would be easier to convince the judge than the jury, Honie did not attest that he believed that. Instead, he argued only the impartiality issue before the state court and attested that "if I had understood the differences between a judge determination and a jury determination, I would have gone with the jury in the penalty phase and not waived the jury."

members of the community, defendant may take part in jury selection, jury verdicts must be unanimous, and a waiver means the court alone decides guilt or innocence. *United States v. Robertson*, 45 F.3d 1423, 1432 (10th Cir. 1995). Utah courts look to the totality of the circumstances to determine whether a defendant validly waived his right to a jury trial; while a court should advise a defendant of the implications of his waiver, it is "under no obligation to provide an exhaustive explanation of all the consequences of a jury waiver." *State v. Hassan*, 108 P.3d 695, 699 (Utah 2004). Therefore, Honie has not demonstrated that the state court decision is contrary to or involves an unreasonable application of clearly established federal law.

### 2. *Strickland* Prejudice Prong

Honie argues that his constitutional rights were also violated when trial counsel failed to withdraw the jury waiver once Honie genuinely understood—after talking to "a jailhouse lawyer"—that "all [he] needed was one juror to hold out and [he] would get life without parole" and he told trial counsel that he wanted to withdraw the waiver. The state court accepted Honie's assertion that he attempted to withdraw his jury waiver, and that his counsel refused to act on his request, telling him it was too late even though the trial was still a week away. *Honie II,* 342 P.3d at 201. The state court did not, however, decide whether this amounted to ineffective assistance of counsel because it found that Honie was not prejudiced because he did not establish "that the outcome of his sentencing would have been different had he opted for jury sentencing." *Id.* Honie argued in state court that he was prejudiced because, but for trial counsel's error, he would not have waived his right to a jury determination of sentence. PCR 811-812. Honie argues that the state court applied an incorrect prejudice standard in the context of a waiver of a constitutional right to a sentencing jury. *See Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

When assessing *Strickland* prejudice, the court asks "whether the petitioner has shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with "a reasonable probability" meaning "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Applying *Strickland*, the state court held that in the context of Honie's claim regarding failure to file a motion to withdraw his jury waiver, Honie failed to satisfy the prejudice prong because he "offered no evidence tending to establish that the outcome of his sentencing would have been different had he opted for jury sentencing." *Honie II*, 342 P.3d at 201.

Honie argues the state court misapplied the term "proceeding" to mean that he needed to establish that he would have received a more favorable sentence had he been sentenced by a jury instead of a judge, when instead, the correct inquiry under *Hill v. Lockhart* is whether the result of the waiver proceeding, not the sentencing, would have been different. In *Hill,* the Supreme Court addressed an ineffective assistance of counsel claim based on counsel's failure to inform a petitioner of the consequences of his guilty plea. Similar to Honie, the petitioner alleged that this lack of information about the right he was relinquishing made his entire guilty plea "involuntary" and "unintelligent." 474 U.S. at 56. The Court concluded that the appropriate focus was on the process that led to the petitioner forfeiting a constitutional right, and thus the "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id. a*t 59. The Court focused on the outcome of the guilty plea proceeding, rather than requiring the defendant to demonstrate that but for counsel's error, he would not have pleaded guilty and would have achieved a better result at trial. *Id.*

Honie argues that the guilty plea context is an appropriate analog to the context of his case because he had a statutory right to jury sentencing under Utah's capital murder sentencing statute, Utah Code Ann. § 76-3-207(1)(c) and (5), and thus any waiver of this right must comport with the demands of Fourteenth Amendment Due Process and Equal Protection. *See Evitts v. Lucey,* 469 U.S. 387, 393 (1985). Honie argues the relevant proceeding when considering an ineffectiveness of counsel claim in the context of a jury sentencing waiver is the sentencing waiver proceeding and not the trial itself; thus, the proper showing of prejudice need only demonstrate that but for counsel's deficient performance, he would have withdrawn his jury waiver and had his sentence decided by a jury of twelve peers, rather than one judge.

Honie has not demonstrated that the state court contradicted or unreasonably applied clearly established Supreme Court precedent. *Hill* was decided in the context of counsel's advice to plead guilty and addressed the appropriate way to frame *Strickland* prejudice when counsel's ineffective assistance caused a defendant to agree to conviction and forego a judicial proceeding altogether. However, a guilty plea and a waiver of jury trial are not a set of facts that are "materially indistinguishable." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). *Hill* does not squarely address Honie's situation, where, despite counsel's assumed pre-trial ineffective assistance, Honie did not agree to a sentence of death and forego a judicial proceeding altogether but waived his right to be sentenced by a jury and instead had the judge determine his sentence.

Honie cites no cases extending the *Hill* prejudice analysis to jury waivers. Circuit courts have applied the usual *Strickland* prejudice analysis in the context of jury waivers. *See Correll v. Thompson*, 63 F.3d 1279, 1292 (4th Cir. 1995) (denying relief on petitioner's claim that counsel improperly advised him to waive a jury trial because "the evidence against Correll was overwhelming, and we have no doubt that had the case been presented to a jury the same result

would have obtained."); *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir. 1989) (holding petitioner failed to establish prejudice from counsel's advice to waive the jury when nothing in the record established that, but for counsel's errors, "a *different* factfinder (i.e. a jury) would have been reasonably likely to arrive at a different outcome.") (emphasis in original); *Brown v. Pitcher*, 19 F. App'x 154, 157–58 (6th Cir. 2001) ("[E]ven if it is assumed that counsel should have advised [petitioner] to withdraw waiver of jury trial, [petitioner] has failed to demonstrate prejudice to his defense, i.e., that the result of a jury trial would have been different.").

Notably, the Third Circuit recently revised its prejudice test in the context of jury waiver. In *United States v. Lilly*, 536 F.3d 190 (3d Cir. 2008), the court rejected the application of the *Hill* prejudice standard to jury waiver. Applying *Strickland*, the court held that whether or not a petitioner was prejudiced by ineffective counsel when deciding to waive the right to a jury trial is determined by looking at whether "in the absence of counsel's advice, another fact finder (i.e. a jury) would have been reasonably likely to arrive at a different outcome." *Id.* at 196. In *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841 (3d Cir. 2017), the court modified *Lilly's* prejudice test for ineffective assistance claims in jury waivers to whether defendant established a reasonable probability that but for his counsel's failure to ensure a proper waiver of his Sixth Amendment right to be tried before a jury, he would have exercised that right. *Id.* at 857. The court reasoned that after the Supreme Court's decision in *Lafler v. Cooper*, 566 U.S. 156 (2012), the process-based test of *Hill* is not limited to situations in which counsel's ineffectiveness prevented a judicial proceeding from occurring at all, but also applies when the defendant ultimately received a fair adjudication, so long as counsel's ineffectiveness affects not the propriety of the proceeding itself, but "the fairness and regularity of the processes that preceded it." *Vickers*, 858 F.3d at 857 (quoting *Lafler*, 566 U.S. at 169). *Lafler* also addressed a guilty

plea, albeit an allegation that counsel's deficient performance caused defendant to reject a plea and go to trial. In *Vickers*, the Third Circuit held the *Hill* standard applies to any ineffective assistance claim based on a pre-trial process that causes a defendant to forfeit a constitutional right; the proper prejudice inquiry is whether the defendant can demonstrate a reasonable probability that, but for counsel's ineffectiveness, he would have opted to exercise that right. *Id.*

Of course, *Vickers* is not a holding of the Supreme Court that was the law at the time of the state-court adjudication. There is no clearly established federal law extending the *Hill* prejudice standard to jury trial waivers. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, the state court did not unreasonably apply clearly established federal law when it applied the usual ineffective assistance prejudice standard in accord with *Strickland*—whether the outcome of Honie's sentencing would have been different had he opted for jury sentencing. *Strickland*, 466 U.S. at 694. Honie clearly has not met his burden under that standard.

Even assuming that Honie articulates the correct prejudice standard, he cannot meet his burden. Honie asserts that he need only demonstrate that if not for counsel's deficient performance, he would have withdrawn his jury waiver and proceeded with a jury during the penalty phase of his trial. Under *Hill*, however, "[a] mere allegation that [a defendant] would have insisted on a trial . . . is ultimately insufficient to entitle him to relief." *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001). Instead, in determining whether trial counsel's ineffectiveness was prejudicial, the court asks "whether going to trial would have been objectively 'rational under the circumstances.'" *Heard v. Addison*, 728 F.3d 1170, 1183 (10th Cir. 2013) (quoting *Padilla v. Kentucky*, 599 U.S. 356, 372 (2010)). To determine rationality, the court should assess "objective facts specific to a petitioner." *Id.* The Tenth Circuit "remain[s]

suspicious of bald, post hoc and unsupported statements that a defendant would have changed his plea absent counsel's errors." *Id.* at 1184.

Honie's showing of prejudice falls short. Honie attested that he would not have waived a sentencing jury if he had understood the difference between judge and jury sentencing. Honie presents no argument in support of how he was actually prejudiced as a result of trial counsel's failure to move to withdraw his waiver; without more, Honie effectively asks the Court to presume prejudice because trial counsel failed to move to withdraw. But as previously discussed, the state court found that he did understand the difference. Moreover, the circumstances of Honie's crime weighed heavily in favor of imposing a death sentence. As the state court recognized, "a defendant will often fare better with a trained jurist than a lay jury, especially when the crime is particularly heinous." *Honie II*, 342 P.3d at 201 (citing *Taylor v. Warden*, 905 P.2d 277, 284 (Utah 1995)). Honie does not allege the judge harbored any personal bias in this case.

Finally, as previously discussed, a defendant has a constitutional right to a jury trial that is waivable as long as the waiver is knowing and intelligent. *Patton v. United States*, 281 U.S. 276, 312 (1930), *overruled on other grounds by Williams v. Florida*, 399 U.S. 78, 90 (1970). The Supreme Court has not addressed the issue of whether an accused who has knowingly waived a jury trial must be permitted to withdraw the waiver. Courts that have addressed the issue have held that withdrawal of a jury waiver is ordinarily within the discretion of the trial court and thus the constitutionally guaranteed proceeding at issue is a defendant's right to jury trial, not the right to withdraw the waiver. *See, e.g., Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995) (finding no authority for the proposition that "when a state court abuses its discretion in denying a defendant's motion to withdraw a previously filed waiver of jury trial, the result is a violation of

the United States Constitution."); *Crosby v. Schwartz*, 678 F.3d 784, 790–91 (9th Cir. 2012)

("We reject [petitioner's] argument that the state court's conclusion as to the withdrawal of jury

waiver was contrary to or an unreasonable application of Supreme Court precedent."). Similarly,

Honie does not cite any Supreme Court case that deals squarely with the issue in the context of

withdrawal of his waiver of right to jury sentencing. Honie's waiver was knowing and voluntary,

and he has not addressed much less demonstrated whether the state court would have exercised

its discretion to grant any such motion to withdraw. Accordingly, Honie has failed to

demonstrate that he was prejudiced by counsel's ineffectiveness under the standard articulated in

*Hill*. Honie has failed to establish that the Utah Supreme Court contradicted or unreasonably

applied United States Supreme Court precedent in denying this claim. The court therefore denies

the third claim for relief.

FOURTH CLAIM FOR RELIEF

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE EVIDENCE OF AGGRAVATED SEXUAL ABUSE OF A CHILD, WHICH THE STATE INTENDED TO INTRODUCE AS AN AGGRAVATING CIRCUMSTANCE IN SUPPORT OF THE DEATH PENALTY, AND FOR INTRODUCING THIS EVIDENCE DURING THE PENALTY PHASE DESPITE THE FACT THAT THE JURY DID NOT FIND IT AS AN AGGRAVATING CIRCUMSTANCE DURING THE MERITS PHASE.

Honie argues that trial counsel was ineffective for allegedly failing to investigate

evidence that Honie sexually abused a minor at the scene of the crime, and for introducing, at

sentencing, Honie's confession to the defense expert, Dr. Cohn, regarding the sexual abuse.

During the merits phase of the trial, the jurors did not find aggravated sexual abuse of a child as

an aggravating circumstance. During the penalty phase, however, the defense expert, Dr. Cohn,

testified that Honie had tearfully admitted to her that he digitally penetrated D.R. while he hid

from police. Trial counsel argued that the admission was evidence of Honie's remorse. Honie

asserts that trial counsel was ineffective for introducing the confession without first investigating claims that D.R.'s father, and not Honie, had molested her.

In a Child Abuse Neglect Report that was part of the Cedar City Police Department homicide file, it was reported that Tom Vaughn, the on-call worker for the Department of Child and Family Services, reported to the scene at the request of the Cedar City Police Department to take custody of the three children who were present. PCR 3518; Cedar City Police Department Records. According to the report:

> In route to the Family Support Center, Dakota told this worker her daddy (name unknown at the time of intake) does this to her: "my daddy does this to me," she then demonstrated with her hand the finger[.] We were discussing the circus then [D.R.] out of the blue mentioned her daddy does the finger to her.

PCR 3518; Cedar City Police Department Records at 140. Honie argues that trial counsel should have investigated this evidence that could have exculpated him as to the charge of aggravated sexual abuse of a child.

## A. Exhaustion

Honie presented this claim during his post-conviction proceedings before the Fifth Judicial District Court. PCR 65, 743-747; Opening Brief of Appellant, 10/01/12, at 25-26, 56-67. The Utah Supreme Court denied this claim on the merits. *Honie II,* 342 P.3d at 199-200. This Court found this claim was exhausted and properly before this Court. ECF No. 103.

## B. "Objectively unreasonable" application of Supreme Court precedent

The Utah Supreme Court concluded that Honie failed to demonstrate unreasonable performance under *Strickland* concerning trial counsel's decision to admit Honie's confession to Dr. Cohn. The court held that "trial counsel's decision to admit potentially damaging statements during trial in an attempt to demonstrate a defendant's remorse is a legitimate trial strategy." *Honie II,* 342 P.3d at 199. The court noted that it would be especially unlikely to "question a

valid strategic choice . . . when the challenged statements are double-edged, containing both inculpatory and exculpatory elements." *Id.* Trial counsel's decision to admit Honie's confession to Dr. Cohn was just such a legitimate trial strategy. Dr. Cohn testified that Honie expressed remorse as he "began crying when he admitted to her that he had molested D.R." *Id.* at 200. The court held that "trial counsel's actions were not objectively unreasonable." *Id.* While the court said that it did not need to reach the prejudice element, it observed that the sentencing court "was prepared to find that Honie molested D.R., even without Mr. Honie's confession," and thus, Honie "cannot demonstrate that, but for trial counsel's decision to introduce his inculpatory statements, the court would not have found that Mr. Honie molested D.R." *Id.* at 200, n. 11.

Honie fails to establish that no "fairminded jurists" would agree that the Utah courts incorrectly resolved this issue. *See Harrington v. Richter,* 562 U.S. 86, 102 (2011). He has not even argued that there would be a reasonable probability of a more favorable sentencing outcome without the sexual abuse aggravating circumstance. He has not refuted the Utah court's conclusion that the sentencing court "was prepared to find" independent of his admission that he molested D.R. And he has not shown that no fairminded jurist would agree that trial counsel made an objectively reasonable decision to present and rely on his admission as evidence of remorse.

At the guilt phase, the state presented evidence in support of the sexual-abuse aggravating circumstance. When Carol and Benita left for work, D.R. was wearing underwear and a t-shirt. Carol testified that she had never seen D.R. without her underwear. D.r. did not complain to Benita about her private parts, despite their relationship where D.R. would tell Benita if something were wrong. TR ROA 607:238, 244-45, 257-58. After the murder, D.R. was no longer wearing her underwear. At the family shelter, a worker gave D.R. new underpants. When the

worker removed them later, she observed fresh blood drops on the crotch. D.R talked about it the next morning but did not identify who injured her. TR ROA 607:382-83.

D.R. was taken to Primary Children's Medical Center and examined by a pediatric emergency physician. He found abrasions on the area around D.R.'s hymen, which he described as evidence of mild trauma, but sufficient to cause bleeding. He concluded that the abrasions were consistent with "rubbing," most commonly with a finger or penis. While he agreed that that kind of injury could take twenty-four to seventy-two hours to heal, he testified that D.R.'s injury was consistent with one inflicted less than twenty-four hours before the examination because the abrasions were still oozing. TR ROA 607:390, 392-94, 396-99.

In its written decision, the trial court found that Honie sexually abused D.R. The court noted that Benita left D.R. "clothed and healthy" at 10:30 p.m., and that D.R. was found "in her injured condition" shortly after midnight. The court recognized that the only other persons in the home were Claudia; two cousins, ages twenty-two months and three years; and Honie "who, just a few hours earlier, had threatened to kill this very child and who murdered and sexually assaulted" Claudia. The court, even without reference to Honie's admission to Cohn, concluded that it was "not plausible to believe anyone other than [Honie] injured the child." In a single sentence at the end of its analysis that D.R.'s injury could not have been accidental, the trial court noted that Honie admitted to Cohn that he fondled D.R. TR ROA 549-548. Although Honie has claimed that trial counsel was ineffective for eliciting Dr. Cohn's testimony that he admitted sexually abusing D.R., he has not claimed that he in fact did not sexually abuse her.

To get relief here, Honie must overcome the double deference standard under §2254(d). To do so, he must show that (1) all fairminded jurists would agree that (2) he had overcome the strong presumption of constitutionally compliant representation. *Harrington*, 562 U.S. at 105.

The defense theme of remorse as evidence of Honie's capacity to change was objectively reasonable. The defense team presented the admission in a way that supported that theme. Dr. Cohn testified that Honie started to cry and stated, "[t]hat happened to me and I can't believe I did that. I don't know why I did that. I can't believe I did that." TR 605:192-193.

Honie claims ineffective assistance of counsel because trial counsel failed to present evidence of D.R.'s statement to the caseworker that her father may have sexually abused her. He says that there is no evidence that counsel investigated the statement. Honie says that counsel should have asked him whether he actually abused D.R. or actually admitted the abuse to Dr. Cohn. He points to his 2011 proffer that he did not abuse D.R. and that Dr. Cohn pressured him into admitting to the sexual abuse. ECF No. 47 at 126-37.

None of these overcome the double deference owed to trial counsel's choices. Honie supports his argument with a misstatement about D.R.'s accusation. He states that counsel was ineffective for failing to investigate "when he knew that D.R. had made a statement to social services staff that her father was the one who molested her." ECF No. 121 at 146. This is not what D.R. said. The report shows only that D.R. said that at some unspecified time her father did something to her with his middle finger. As stated above, the examining physician believed the injury he observed had been inflicted less than 24 hours earlier. There is no evidence in the record to show that D.R.'s father had access to her in that period. The indisputable evidence shows that Honie did.

Honie's argument that his counsel should have questioned him about whether he actually molested Dakota also fails to overcome the double deference standard. Counsel knew that Honie admitted to the defense expert that he sexually abused D.R. Honie says that counsel should have asked him whether that was true, but he does not explain why he did not tell counsel that it was

not true. In fact, Honie waited 11 years to challenge Dr. Cohn's sworn testimony about his tearful admission. Under *Strickland*, the reasonableness of counsel's investigation "depends critically" on the information that the client provides. 466 U.S. at 691. Honie has failed to establish that the Utah Supreme Court contradicted or unreasonably applied United States Supreme Court precedent in denying this claim. Therefore, the fourth claim for relief is denied.

FIFTH CLAIM FOR RELIEF

TRIAL COUNSEL FAILED TO CONDUCT A REASONABLE MITIGATION INVESTIGATION

Honie asserts that trial counsel failed to conduct an adequate mitigation investigation by (1) relinquishing this duty to people who were not qualified to perform and who did not perform a reasonable mitigation investigation, and (2) by failing to follow up on red flags revealed during the investigation that warranted further exploration.

## A. Exhaustion

Honie presented this claim during his post-conviction proceedings before the Fifth Judicial District Court and the Utah Supreme Court. PCR ROA 65-68, 766-784; Opening Brief of Appellant, 10/01/12, at 76-91; Reply Brief of Appellant, 05/16/13, at 26-33. The Utah Supreme Court denied this claim on the merits. *Honie II*, 342 P.3d at 192-95. This court found this claim was exhausted and properly before the court. ECF No. 103.

## B. Clearly Established Law

The Utah Supreme Court based its ruling on this claim on *Strickland*, noting that Honie had not demonstrated "that counsel's representation fell below an objective standard of reasonableness." *Honie II*, 342 P.3d at 195 (quoting *Strickland,* 466 U.S. at 687-88). The court also reiterated that "a court must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance." *Honie II*, 342 P.3d at 195 (quoting *Strickland,* 466 U.S. at 689). *Strickland* is clearly established law.


### C. Procedural History

The trial court sentenced Honie to death in a detailed ruling. PL ROA IV:552-543. The court found as aggravating circumstances (1) that Honie murdered Claudia while engaged in object rape, aggravated sexual assault based on the attempted forcible sodomy, and aggravated burglary; (2) Honie's criminal history, principally a previous attack on Claudia's daughter, Carol; (3) that Honie committed the murder while children were present; and (4) that Honie committed aggravated sexual abuse of one of the children. PL ROA IV:551-546.

The court agreed that while Honie's criminal history was not significant in number, it was significant in nature. The court noted that the evidence indicated that Honie "suffered from both alcohol abuse and depression." PL ROA IV:545. The court recognized that Honie was "somewhat intoxicated," noting that it used the qualifier "somewhat" because there was no breath test and because of conflicting witness testimony. The court stated, however, that Honie was sufficiently sober to give the taxi driver directions, converse with police, and determine a way to get into Claudia's house. Importantly, Honie also eventually admitted that he remembered the crime details. The court thus concluded that his intoxication did not prevent him from appreciating that what he did was wrong or from conforming his conduct to the law. PL ROA IV:545-544.

The court noted that although Honie was relatively young, none of the prior attempts at counseling "had a discernible [e]ffect on" him. PL ROA IV:544. The court found as additional mitigation that Honie was kind as a child, that he carried water and chopped wood for older

people, and that his family loved him. The court also found Honie's remorse as a mitigating factor. PL ROA IV:544.

The trial court discredited the allegation that John Boone attempted to rape Honie. The court reasoned that (1) Boone kept a meticulous chart of his predatory crimes, but did not include Honie among his victims; (2) Honie was the only person not on the chart who claimed Boone had molested him; (3) only Honie alleged that Boone's first and only attack was an attempted anal intercourse—his other victims described Boone working his way up to sodomy; and (4) Honie never mentioned the sodomy in his weekly counseling sessions. PL ROA IV:544-543.

The trial court found "beyond a reasonable doubt" that "the totality of aggravating circumstances outweigh the totality of mitigating circumstances," not in terms of their relative numbers, "but in terms of the respective substantiality and persuasiveness." TR ROA 606:86 The court then found "beyond a reasonable doubt" that a death sentence was "justified and appropriate under the circumstances." *Id.*

During state post-conviction proceedings, Honie challenged trial counsel's mitigation investigation as being constitutionally inadequate. In support of this claim, he introduced the affidavit of a post-conviction mitigation investigator, Bruce Whitman, who identified several areas of the mitigation case that he felt were inadequate given Honie's background, life history and experiences. *See* ECF No. 121 at 156-159. The State moved to dismiss Honie's Amended Petition and moved for summary judgment on most of his claims, including his mitigation claims. PCR ROA 212-217. The state district court denied the State's motion as to Honie's claims involving ineffective assistance of counsel for failing to conduct an adequate mitigation investigation. Because neither party submitted an affidavit from trial counsel, indicating the scope of his investigation, the district court concluded that there was "little in the record" to

contradict Whitman's assessment of trial counsel's investigation. The court held that "Whitman's affidavit raise[d] a genuine issue with respect to whether trial counsel's less-than-complete investigation was reasonable and, therefore, whether he failed to comply with prevailing norms of professional practice in conducting his mitigation workup." PCR ROA 1037-1038.

The court then granted the State leave to do discovery. During discovery, the State asked Honie to identify the witnesses he intended to call to provide evidence in support of his outstanding claims and to detail the testimony each would give. *See* ECF No. 70 at 106-110 for the list of witnesses and their testimony. The State proffered an affidavit from Honie's lead trial counsel, describing his qualifications, and the qualifications of and investigation done by Dr. Cohn and Ted Cilwick. Based on that affidavit and Mr. Honie's discovery responses, the State moved for summary judgement on the outstanding penalty-phase ineffective-assistance claims. Honie responded that he could not oppose the motion without additional funds. After extensive litigation over funding, the state district court denied Honie's request for more funds. The court reasoned that Honie could not show that additional funds were likely to develop evidence that would support post-conviction relief. This was so, according to the court, because trial counsel's uncontroverted affidavit showed that he reasonably relied on the advice of his mitigation expert. Therefore, Honie could not, as a matter of law, prove deficient performance. Mr. Honie responded to the summary judgment motion, and in June 2011 the district court granted summary judgment and denied all relief. Honie timely appealed.

While the post-conviction appeal was pending, Honie moved to set aside the post-conviction judgment, arguing that the district court's funding decisions denied him the effective assistance of post-conviction counsel. With the motion he proffered some of the additional evidence he argued he could have proffered with the summary judgment opposition if the district

court had given him the money he requested. The district court denied 60(b) relief, concluding, among other things, that Honie had not shown that the funding decisions prevented counsel from developing the evidence because he had developed and proffered most of it with the 60(b) motion even without additional state funds. The court also reasoned that the proffer was still not enough to create a fact issue on either element of Honie's penalty-phase ineffective-assistance claims. ECF No. 70-2, Exhibit 2.

The Utah Supreme Court affirmed, holding that Honie had not proved deficient performance. The court reasoned that trial counsel had hired a credentialed psychologist with forensic training as a mental health and mitigation consultant and relied on her advice. She did a thorough examination that included psychological testing and a review of Honie's background. The court also found that trial counsel properly relied on Honie and his family to provide information about his personal life and mental state. *Honie II,* 342 P.3d at 192-95.

Honie has not shown that no fairminded jurists would agree. He only suggests additional background witnesses trial counsel could have called and proffers a different mental health diagnosis—frontal lobe dysfunction that limits his ability to control his conduct and contributes to aggression. Honie bases his argument primarily on an evidentiary proffer he did not make to the state courts.

The Utah courts rejected Honie's challenge to trial counsel's penalty-phase investigation on the merits. Therefore, this court must restrict its review of that decision to the record before the Utah courts. *See Cullen v. Pinholster,* 563 U.S. 170, 180-87 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."). Thus, under *Cullen,* this court cannot consider Honie's proffer of new evidence. Furthermore, Honie has not explained how, on the

record before the Utah courts, no fairminded jurist could agree that he failed to prove penalty-phase ineffective assistance. Thus, the court must deny the claim.

Honie seems to argue that the *Cullen* restriction does not apply because the state courts denied him further funding to investigate the post-conviction case. ECF No. 47:145-50. However, *Cullen* does not limit the record restriction to claims developed with funding. Rather, by its plain language, *Cullen*'s record restriction applies so long as the state court adjudicated the claim on its merits. Furthermore, even if state funding limits could avoid *Cullen*'s restriction, Honie has not shown that the restrictions he actually faced justify disregarding *Cullen*. The Utah courts only denied funding to develop evidence to prove *Strickland* prejudice because Honie had not proven *Strickland* deficient performance.

Before 2008, funding for litigation costs in Utah death-penalty post-conviction cases had an absolute cap of $20,000 set by administrative rule. Utah Code Ann. § 78-35a-202(2)(c) (West 2004); Utah Admin. Code r. 25-14-4, -5 (2007). Honie received the full $20,000. In 2008, the Utah legislature amended the funding statute to provide funds for reasonable litigation costs. The revision set a presumptive $20,000 limit but gave courts authority to exceed that amount on a showing of "good cause." Utah Code Ann. § 78B-9-202(c). To determine "good cause" courts must consider two factors: (1) the extent to which a petitioner requests funds to duplicate work done in the criminal case; and (2) the extent to which the funds will allow a petitioner to develop evidence and legal arguments to support post-conviction relief. §78B-9-202(3)(a), (e).

After those amendments, Honie requested funds beyond $20,000 to develop penalty phase evidence in addition to and different from the evidence trial counsel presented. The state district court denied his funding requests after the State submitted trial counsel's affidavit. The court reasoned that considering the affidavit, Honie could not prove deficient performance. And

if he could not prove one element of ineffective assistance, there was no reason to provide him funds to develop evidence in support of the other.

The Utah post-conviction courts determined that trial counsel's mitigation case was not deficient as a matter of law. *Honie II,* 342 P.3d at 203. Therefore "an award of funds would have been inappropriate." *Id.* at 204 n. 13. Honie argues that he could not rebut trial counsel's affidavit "[w]ithout funding to develop his colorable [ineffective assistance] claims." ECF No. 47 at 147. But in the three years between the time Utah allowed additional funds and when Honie responded to the State's second summary judgment motion, he never asked for funds to rebut the affidavit. In all that time, he never asked for funds to develop any evidence about what his defense team actually did and why. He only asked for funds to develop an alternative mitigation case, not to develop evidence that no objectively reasonable attorney would have developed the case his trial team did. Even now, he has proffered no evidence from lead trial counsel about the decisions he made and why.

Honie has not overcome the double deference owed to trial counsel's penalty-phase representation. Trial counsel hired an experienced investigator and a psychologist with forensic training, both of whom he had worked with previously. With their assistance, counsel developed and presented a case that covered Honie's personal history, his family history, his substance abuse problems, and his mental health issues, both generally and specifically related to the crime. They also presented evidence of his and his family's good qualities.

Dr. Cohn also proffered evidence that Honie would not likely be violent in prison. She relied on her conclusion that he did not have brain damage and that he was of average intelligence, and then she said that in prison Honie could not get the only thing that made him violent—alcohol. She testified that she could reliably predict that he would age out of his

aggression. The Utah Supreme Court concluded that this was objectively reasonable, and Honie has not shown that no reasonable jurist would agree.

Honie argues that because trial counsel admitted in his affidavit that he turned the mitigation investigation over to Dr. Cohn and also relied on the investigation by Mr. Cilwick for mitigation leads, his affidavit was insufficient to determine whether the mitigation investigation was adequate or reasonable. Honie asserts that the State was also required to present affidavits from Dr. Cohn and Mr. Cilwick before the state court could determine whether the investigation was reasonable. But Honie does not explain why he waited so long to present those affidavits.

After the state district court granted judgment against him on his penalty-phase ineffective-assistance claim, Honie moved to set the judgment aside. He supported it with a proffer of some alternative penalty-phase evidence developed by his federal habeas counsel and an affidavit from his trial investigator, Cilwick. But Honie never explained why he could proffer that evidence only after the state district court entered judgment against him or why even then he could proffer only part.

Honie moved to appoint federal habeas counsel three and a half years before he opposed the second summary judgment motion in the state case. ECF No. 1. Honie represented that the "immediate appointment of counsel" was "necessary to begin the investigation into Honie's case." *Id.* 4. The court granted the motion the same day. ECF No. 3. It was three and a half years after the "immediate appointment" of federal habeas counsel to investigate his case, and only after the state court entered judgment against him, that he presented anything from that investigation to oppose the State's motion.

The court finds that Honie has not shown that, on the record before the state courts, no reasonable jurist could agree with their disposition. And his arguments about funding are legally

and factually insufficient to justify disregarding *Cullen*'s mandate restricting this court's review to the record before the state courts. For the above reasons, the court hereby denies claim five.


SIXTH CLAIM FOR RELIEF

THE TRIAL COURT'S FINDINGS OF FACT AND DETERMINATIONS OF LAW REGARDING THE AGGRAVATING AND MITIGATING CIRCUMSTANCES DID NOT COMPLY WITH DUE PROCESS OR THE NEED FOR AN INDIVIDUALIZED SENTENCING PROCEDURE WHICH GIVES FULL EFFECT TO ALL OF THE EVIDENCE PRESENTED AT TRIAL

Honie claims that the trial court failed to provide a proper, individualized sentence, and that the Utah Supreme Court failed to correctly review the case according to the constitutional standard identified by the United States Supreme Court. Honie argues that instead the Utah Supreme Court simply reiterated the trial court's findings.

**A. Exhaustion**

This claim was raised as Argument III in Honie's direct appeal brief. Opening Brief of Appellant, 04/11/00, at 91-138. The Utah Supreme Court considered Honie's challenges to the trial court's sentence, both collectively and individually. It rejected some and held that others were harmless regardless of whether they were correct. *Honie I, 57 P.3d at 991-95.*

**B. "Clearly Established" Rule of Law**

The state court relied on *Tuilaepa v. California,* where the Supreme Court held that as a matter of federal constitutional law, aggravating factors must meet two requirements: "First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. Second, the aggravating circumstance may not be unconstitutionally vague."*Honie I*, 57 P.3d at 992 (quoting *Tuilaepa v. California,* 512 U.S. 967, 972 (1994)). The Utah court then stated that it would first determine whether the trial court had

weighed any improper factors, and if it had, then they would evaluate whether the error was harmless, non-prejudicial error. *Honie I*, 57 P.3d at 992

The state court also relied on *Zant v. Stephens,* for the proposition that "a death sentence supported by multiple aggravating circumstances need not always be set aside if one aggravating factor is invalid." *Honie I*, 57 P.3d at 994 (quoting *Zant v. Stephens*, 462 U.S. 862, 890 (1983)). The state court noted that in applying *Zant*, it would "afford a measure of discretion to the conclusion reached by the trial judge who weighs evidence received regarding aggravating and mitigating factors presented during the penalty phase." *Honie I,* 57 P.3d at 994.

### C. "Objectively unreasonable" application of Supreme Court precedent

Honie argues that the Utah Supreme Court took the stance that if there was one aggravating factor that was properly found, it would not review the other aggravating or mitigating factors for error in application but would defer to the lower court's determination of the sentence. He also argued that the state court conducted no individualized review of the non-statutory aggravating and mitigating factors, but simply reiterated the trial court's findings. This is not what the state court did. The court stated that if one of multiple aggravating factors were constitutionally or statutorily improper to consider, the error would not undermine their confidence in the trial court's sentence. *See Honie I,* quoting *Zant,* 462 U.S. at 890 for the proposition that a death sentence supported by multiple aggravating circumstances need not always be set aside if one aggravating factor is invalid.).

The Utah Supreme Court considered Honie's challenges to the trial court's sentence, both collectively and individually. It rejected some and held that others were harmless regardless of whether they were correct. The trial court did what was required for an individualized determination—it allowed and considered Honie's mitigation evidence. *See Tuilaepa v.*

*California,* 12 U.S. 967, 972 (1994) (holding that the right is satisfied if the sentencer "can consider relevant mitigating evidence of the character and record of the defendant and the circumstances of the crime"). The state court's decision was not an unreasonable application of *Tuilaepa* such that no reasonable jurist could agree with it.

Honie was particularly concerned about the language used in the trial court's exclusion of the prosecutor's closing statement that Claudia was not a "drunken Indian in the park," but rather an asset to the Paiute community. ECF No. 121 at 226-27. After clarifying that it was excluding the statement from its sentencing calculus, the court said, "The murder of any victim under the circumstances of this case, no matter what the victims [sic] status, would have been just as painful, traumatic, and reprehensible, and would require the same punishment." TR ROA 546. Honie says that this statement shows that the court was not treating *him* as a "uniquely individual human being." ECF No. 121 at 227. However, it is clear from the statement itself that the court was saying that the *victim*'s social status, not Honie's, was irrelevant to it sentencing calculus.

Honie has not shown that the Utah Supreme Court violated clear United States Supreme Court precedent when rejecting his individualized sentencing claim. The trial court allowed Honie to present his mitigation evidence, and the court considered the evidence. That was all that was required for an individualized determination. *See Tuilaepa,* 12 U.S. at 972. The state court's decision on this claim was not an unreasonable application of *Tuilaepa* such that no reasonable jurist could agree with it. Therefore, the Court denies the sixth claim.


SEVENTH CLAIM FOR RELIEF

HONIE'S DEATH SENTENCE WAS THE PRODUCT OF PROSECUTORIAL RACIAL DISCRIMINATION

Honie asserts that his death sentence violates the Equal Protection clause of the Fourteenth Amendment because the prosecution's pursuit of capital punishment was motivated by racial animus. He argues that racially disparaging comments made by the prosecutor in closing argument provide sufficient evidence to show that the decision to pursue the death penalty in this case was motivated, at least in part, by racial discrimination.

At trial, during closing arguments, the prosecutor stated that Honie "did not murder a drunken Indian in the park. . . . He did not murder a woman who, ah, had spent her live [sic] drinking alcohol and puking and walking the streets and shoplifting at Wall-Mart [sic]. He murdered someone that these people look up to." TR ROA 606 at 54. Honie argues that the clear intent of this statement was to draw a relative comparison between him—described with racist comments—and the victim. Honie asserts that the prosecutor drew a comparison between a person whom he believed deserved to live, and one whom he believed deserved to die, partially for reasons not related to the offense.

**A. Exhaustion**

This claim was raised on direct appeal (Opening Brief of Appellant, 04/11/00, at 79-81) and the Utah Supreme Court denied it on the merits. *Honie I*, 57 P.3d at 986. This court found that this claim was exhausted and properly before this court. ECF No. 103.

**B. "Clearly established" rule of law**

The Utah Supreme Court based its ruling on this claim on *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), stating that Honie "offered no indication that he was treated any differently than another person of a different race or ethnicity in similar circumstances." *Honie I*, 57 P.3d at 986. The clearly established rule of *Yick Wo* and its progeny states that facially fair and impartial laws "may be unconstitutional as applied if administered in such a way so as to cause unjust and

illegal discriminations between persons in similar circumstances." *Id*. (citing *Yick Wo*, 118 U.S. at 374; *McCleskey v. Kemp*, 481 U.S. 279 (1987); *Wayte v. United States*, 470 U.S. 598,608-10 (1985); *Oyler v. Boles*, 368 U.S. 448, 455-56 (1962). The parties agree that on this claim the Utah Supreme Court correctly identified the applicable clearly established federal law. ECF No. 123 at 86; *see also* ECF No. 122 at 184-87.

## C. "Objectively unreasonable" application of Supreme Court precedent

While the parties agree that the Utah Supreme Court correctly identified applicable federal law, Honie argues that the application of that law was unreasonable. He argues that evidence of racially negative commentary during closing argument alone is sufficient to show that the prosecution's pursuit of the death penalty was motivated by racial animus. He additionally identifies the court's observation that the "racially-related comments… were clearly offensive and distasteful" as evidence of the unreasonableness of its decision to uphold the capital ruling. *Honie I*, 57 P.3d at 986. He asserts that in light of such a statement, any reasonable court would find that the prosecutorial pursuit of the death penalty was racially motivated in violation of *Yick Wo* and the Fourteenth Amendment. These arguments do not persuade this Court.

In each Supreme Court case cited by Honie, the party asserting unfair application of a facially impartial law presented some form of evidence of individuals in similar circumstances who were treated differently to show that the law was being applied discriminatorily. *McCleskey v. Kemp*, 481 U.S. at 286-87; *Wayte,* U.S. at 604; *Oyler v. Boles*, 368 U.S. at 454-55; *Yick Wo*, 118 U.S. at 374. However, in the instant case, Honie has offered no evidence to suggest that other individuals in similar situations have been, or are being, treated differently. The Utah Supreme Court noted this when it stated that the "defendant has offered no indication that he was

treated any differently than another person of a different race or ethnicity in similar circumstances." *Honie I,* 57 P.3d at 986. Additionally, Honie has provided no authority to suggest that this claim may be upheld without such evidence. In fact, the Supreme Court has previously held the opposite. *United States v. Armstrong*, 517 U.S. 456, 457 (1996) ("To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."). Based on the evidence presented, the Utah Supreme Court was reasonable in determining that Honie had not met his burden to show that the prosecution's actions were motivated by race. Honie's seventh claim for relief is denied.


TWELTH CLAIM FOR RELIEF

THE UTAH AGGRAVATED MURDER STATUTE FAILS TO NARROW THE CLASS OF ELIGIBILITY FOR THE DEATH PENALTY, RESULTING IN SENTENCES THAT ARE ARBITRARY AND ARE IN VIOLATION OF DUE PROCESS AND EQUAL PROTECTION

Honie asserts that the Utah aggravated murder statute, U.C.A. §76-2-202, is unconstitutional under due process and equal protection because it fails to genuinely narrow the class of persons eligible for the death penalty from the class of persons guilty of criminal homicide generally.

A. **Exhaustion**

Honie raised this claim at trial (TR ROA 304-08) and on direct appeal (ECF 103 at 4) ("Mr. Honie incorporated his pre-trial motion and memorandum by reference in his direct appeal brief, thus exhausting it."). The Utah Supreme Court denied the claim on the merits. *Honie I*, 57 P.3d 986. This court found that this claim was exhausted and properly before this court. ECF No. 103.

B. **"Clearly established" rule of law**

The state court's ruling on this claim relied on the United States Supreme Court's ruling in *Lowenfield v. Phelps*, 484 U.S. 231 (1988), as it was applied in *State v. Young*, 853 P.2d 327, 352 (Utah 1993). *Lowenfield*, and its predecessors, required that capital sentencing schemes must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Lowenfield*, 484 U.S. at 244 (citing *Zant*, 462 U.S. at 877. Particularly in *Lowenfield,* the court determined that the Louisiana capital murder statute was constitutional even when the aggravating factor justifying the death penalty was an element of the underlying crime in the guilt phase, because the statute narrowed the class of persons eligible for the death penalty by legislative articulation at the guilt phase. The Louisiana statute at issue required specific intent combined with one of ten other aggravating circumstances to establish qualification for the death penalty. The court's standards in *Lowenfield* are clearly applicable to Honie's claim that the Utah aggravated murder statute, which requires an intentional or knowing homicide combined with an aggravating circumstance from any of twenty subsections, fails to narrow the class of persons eligible for the death penalty.

As *Lowenfield* and its predecessors provide the appropriate federal precedent applicable to this claim, the remaining question is whether reasonable jurists could agree that the Utah Supreme Court correctly resolved the federal issue. *See Harrington*, 562 U.S. at 101.

B. **"Objectively unreasonable" application of Supreme Court precedent**

While Honie agrees that *Lowenfield* and its predecessors are the applicable precedent to this case, he argues that the Utah Supreme Court unreasonably applied that precedent to Utah's aggravated murder statute. In evaluating this issue, the Utah Supreme Court stated:

> In *State v. Young* we held that so long as the initial narrowing of death-eligible defendants occurs at the guilt phase in Utah's statutory scheme, any expanded consideration of factors at sentencing is constitutional. 853 P.2d 327, 352 (Utah 1993); *see also State v. Lafferty*, 20 P.3d 342. With respect to the statutory scheme applicable to defendant, the narrowing of death-eligible defendants occurs at the guilt phase, *see* Utah Code Ann. §§ 76–5–202, 76–3–206, and 76–5–203, and therefore we reject defendant's argument.

*Honie I*, 57 P.3d at 986.

To succeed on this claim, Honie "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 786-87. Honie argues that 1) the court was unreasonable because the broad expanse of aggravating circumstances in the Utah statute encompasses nearly every homicide; 2) the court was unreasonable in relying on *Young,* which addressed a previous version of the statute; and 3) the arbitrary nature in which the death penalty has been applied makes clearly unreasonable the determination that the statute does narrow the class of death eligible individuals. These arguments do not overcome the high burden of § 2254, that no fairminded jurist would agree with the determination of the Utah Supreme Court.

While the list of aggravating circumstances in the statute at issue in *Lowenfield* is less comprehensive than the list in the Utah statute, the structure of the statute is similar in nature, requiring a showing of intent plus one of the aggravating factors. Honie himself states in his petition, "[t]raditionally, when the merits phase is used as the narrowing mechanism, the requirement to prove an aggravator to establish eligibility for the death penalty has been determined to be enough of a check on the decisionmaker." ECF No. 121 at 253. He then states, however, that when the list of aggravators becomes as comprehensive as the list included in the Utah statute, that check is no longer effective, and the application becomes arbitrary. While

Honie may disagree with the Utah Supreme Court about the point at which a list of aggravators becomes so comprehensive that it does not narrow the class of death eligibility, the Utah court's determination that it is similar to the statute in *Lowenfield* is not clearly or objectively unreasonable.

Honie also claims that the court's reliance on *Young* undermines the reasonableness of its determination. But the court refers to its reasoning in *Young* and then applies that reasoning "to the statutory scheme applicable to defendant." *Honie I,* 57 P.3d at 986. The reference to *Young* implies that the reasoning in this case is also centered on *Lowenfield* and this court is not to grant a writ simply because of a lack of adequate citation. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("[F]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.").

Finally, Honie claims that the arbitrary application of the statute shows that the statute fails to narrow the class. However, Honie does not provide adequate evidence of this claim and so this court cannot state that no reasonable jurist could agree with the Utah Supreme Court's determination.

Under the high bar of § 2254, Honie has not shown "beyond any possibility for fairminded disagreement" that the Utah aggravated murder statute which applied to his conviction unconstitutionally fails to narrow the class of eligibility for the death penalty. *See Harrington*, 562 U.S. at 103. The twelfth claim for relief is denied.


## V.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Habeas Corpus Cases Under Section 2254, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." U.S.C.S. Sec. 2254 Cases R. 11(a).

Rule 22(b) of the Rules of Appellate Procedure states that an applicant in habeas corpus proceedings "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." The Rule also states that "[i]f the district judge has denied the certificate, the applicant may request a circuit judge to issue the certificate." Rule 22(b)(1). A number of courts have held that unless the district court has ruled upon whether a certificate of appealability should issue, the circuit court is without jurisdiction to consider an appeal. *United States v. Mitchell,* 216 F.3d 1126, 1130 (D.C. Cir. 2000) ("Rule 22(b) requires initial application in the district court for a COA before the court of appeals acts on a COA request."); *United States v. Youngblood,* 116 F.3d 1113, 1115 (5th Cir. 1997) ("[J]urisdiction is not vested in this Court because the district court has not yet considered whether COA should issue.").

Under AEDPA, a certificate of appealability (COA) may issue only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court has said that the "substantial showing" standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893, and n. 4 (1983). When a district court rejects on the merits a petitioner's constitutional claims—which this court did with claims 1, 2, 3, 4, 5, 6, 7, and 12 —the requirement for satisfying 2253(c) is straightforward: "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

This court, having considered the above standard, concludes that Honie has failed to make a substantial showing of the denial of a constitutional right with regards to these claims

for the reasons set forth in this Memorandum Decision and Order denying Honie's Amended Petition.

## VI. CONCLUSION

For the reasons set forth above, the court hereby **denies** Mr. Honie's claims in his Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. ECF. No 121. The court also **denies** Mr. Honie a certificate of appealability. He now "may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." U.S.C.S. Sec. 2254, Cases R. 11(a).

SO ORDERED this  12th  day of June, 2019.

BY THE COURT:

 s/  Julie A. Robinson
Judge Julie Robinson
United States District Judge